CORN EXCHANGE NATIONAL BANK AND TRUST COMPANY, PHILADELPHIA, PLAINTIFF-RESPONDENT, v. WILLIAM F. TAUBEL, DEFENDANT-APPELLANT.

Argued May 21, 1934—Decided October 5, 1934.

For the appellant, *Merritt Lane* and *Harry Cassman*.

For the respondent, *Louis B. LeDuc*.

The opinion of the court was delivered by

HEHER, J.   Defendant challenges a judgment entered upon a jury verdict rendered at the Atlantic Circuit in favor of plaintiff in this action upon a promissory note in the sum of $248,225, made by Clarence H. Taubel to plaintiff's order, and endorsed by defendant, his father, bearing date December 28th, 1931, and payable three months thereafter.   The defense interposed was that defendant had become an accommodation endorser of the note at plaintiff's request, and in

consideration of its promise, made in writing on October 2d, 1930, not to seek enforcement of the obligation for a period of two years after September 26th, 1930, and that, consequently, the debt had not matured and the action was premature. The note in suit was the last of a series of renewals of an original note endorsed by defendant, also made by Clarence, bearing date September 26th, 1930, but not endorsed by defendant until the foregoing promise of October 2d was made. The last mentioned note was a renewal of a note made by Clarence—the last of a series of single-name time notes given by Clarence to evidence and secure (by collateral pledge) his indebtedness to plaintiff growing out of the discount of his negotiable paper.

The bank, while conceding an obligation in the premises, maintained that the extent of its undertaking was to renew from time to time during the two years period, by like negotiable paper, the note thus endorsed by defendant; that it was incumbent upon him to tender at maturity a renewal of the note in suit; that he failed in the fulfillment of this duty, and that, in the circumstances, defendant's obligation upon the matured note was then enforceable. The trial judge determined that this was the full extent of the bank's contractual obligation, and that the duty rested upon defendant and the maker of the note "to present to the plaintiff bank renewal notes * * * made by Clarence and endorsed by his father, during this period of two years." The evidence relating to the fulfillment by the parties of their respective obligations was in conflict, and the issue was submitted to the jury for determination.

The first insistence of appellant is that there was error in the denial of his motion for the direction of a verdict in his favor. This is predicated upon the contentions (1) that he was not obliged "to *tender* a renewal note *endorsed* by him," and that, even so, the bank, in this instance, assumed the duty of preparing, and tendering to him for signature, a renewal note, and tender by him was consequently excused; and (2) that he was not required to *sign* a renewal note "if tendered to him for signature by the bank," and at all events

not in the form submitted by the bank, for thereby "his relationship to the transaction would have been changed," and his obligation altered to his detriment. One of the grounds urged at the trial, in support of this motion, was that the bankruptcy of the maker "accelerated the obligation of the maker and also the endorser," and as well "accelerated the liability of the endorser as measured by the collateral contract," but this point is not advanced here, and need not be considered.

Therefore, the primary question is the ascertainment of the contractual rights and correlative duties of the respective parties. The bank did not regard the loan as amply secured. It demanded payment or additional security. The negotiations between its officers and Clarence resulted in the forwarding of a communication by the bank to appellant, under date of September 26th, 1930, advising him that if he would endorse *"this obligation* [there was a prior reference to the note made by Clarence which matured on that day], we would be perfectly willing to *carry it along* for eighteen months." On October 2d following, the bank, acquiescing in a counter proposal by appellant that the term be fixed at two years, by letter addressed to.him, expressed a willingness "to *carry this loan along* for a period of two years," if he would "endorse this note." And in this missive also there was previous mention of the overdue note made by Clarence. Thereupon appellant endorsed a renewal note made by Clarence.

This is clearly an integrated contract. Appellant's endorsement of the note, immediately upon receipt of the letter of October 2d, was an unqualified acquiescence in the proposal therein contained—it was a manifestation of assent to the writing as a definite and complete expression of the contract. This constituted an integration of the agreement. The writing, even though informal in character, was adopted by the parties as a statement of their bargain. They assented to the words used as binding upon them. 1 *Contracts A. L. I.,* § 228; *Williston on Contracts,* § 606. The cardinal rule, in the interpretation of contracts, is to ascertain and give

effect to the common intention of the parties so far as it may be effectuated without infringing legal principles. *Basic Iron Ore Co.* v. *Dahlke,* 103 *N. J. L.* 635; *Dixon* v. *Smyth Sales Corp.,* 110 *Id.* 459; *Westville Land Co.* v. *Handle,* 112 *Id.* 447. But where, as here, the parties have made a memorial of their bargain, or a writing is required by law, their actual intent unless expressed in some way in the writing is ineffective, except when it may, in accordance with established principles, afford the basis for a reformation of the writing. While the intention of the parties is sought, it can be found only in their expression in the writing. In effect, it is not the real intent but the intent expressed or apparent in the writing that controls. The obligation of a contractor depends upon his expressed, not his actual intention. *Williston on Contracts,* §§ 608, 610, 629. The parties are bound by the language used regardless of their intent. The terms of the writing are exclusive, and, therefore, a contract may have a meaning different from that which either party supposed it to have. 1 *Contracts A. L. I.,* § 230. Otherwise, there would be a disregard of the well settled rule forbidding the introduction of parol evidence to contradict the terms of a written contract. In fine, the ascertainment and effectuation of the intention of the parties, as manifested by the language employed and the object to be accomplished, are the ends to be served in the interpretation of written agreements.

The standard of interpretation of an integrated agreement supported by the weight of modern authority, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the writing, other than oral statements by the parties of what they intended it to mean, except where it produces an ambiguous result, or is excluded by rule of law establishing a definite meaning. 1 *Contracts A. L. I.,* § 230. This has been termed a primary rule of interpretation which is always applicable, whether the writing seems clear or ambiguous. *Williston on Contracts,* §§ 617, 618. The

underlying theory is that as all language will bear "some different meanings," evidence of surroundings is always admissible in the interpretation of integrated agreements, but not for the purpose of giving effect to an intent at variance with any meaning that can be attached to the words. 1 *Contracts A. L. I., p.* 324. But, however this may be, the propriety of admitting evidence of extrinsic facts, where the meaning of the instrument is not clearly apparent, cannot be gainsaid. Where, as here, general or indefinite terms are employed in the agreement, the court may look into the attending circumstances, and avail itself of such light as they may afford in ascertaining the true meaning of the language so used. *Basic Iron Ore Co.* v. *Dahlke, supra; Fletcher* v. *Interstate Chemical Co.,* 94 *N. J. L.* 332; 1 *Contracts A. L. I.,* § 235. In such a situation the court must regard the relation of the parties and the circumstances under which the contract was made, and the objects which the parties were thereby striving to accomplish. Such an inquiry is not for the purpose of changing the writing, but to secure light by which to ascertain its actual significance. *Walker* v. *Brown,* 165 *U. S.* 654; 17 *S. Ct.* 453; 41 *L. Ed.* 865. It must always be kept in mind that, in an action on the contract, such evidence is admissible only for the purpose of interpreting the writing —not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the instrument. So far as the evidence tends to show not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant. *Williston on Contracts,* § 629; 1 *Contracts A. L. I.,* § 235.

The words employed in the instant contract are obviously general and indefinite, and of doubtful and uncertain meaning, and require clarification by the application of the established standards of interpretation. What was contemplated by the operative clause "carry this loan along?" Appellant insists that his obligation was that of a mere "guarantor upon an obligation past due," and that it was therefore not requisite that there be successive renewals of the overdue note during the contract period. We are unable to subscribe to this view.

The agreement must be construed in the light of the accepted banking principles and practice which had theretofore governed the parties to this loan transaction. The obligation undertaken was not to continue in existence the overdue promissory note made by Clarence, evidencing the original loan, but rather the *loan* itself in the manner which had theretofore obtained, viz.: By a series of promissory notes, negotiable in form, each for a term conforming to established banking practice, and each to be accompanied by the payment of discount at the customary rate. When considered in the light of the attendant circumstances, such was indubitably the intention of the parties. When so considered, this stipulation is implicit in the phrase in question—an expression that, standing alone, is quite readily susceptible of a narrower interpretation. The promissory note is the customary instrument employed by banks for evidencing a loan and the undertaking of those obligated for its repayment, and the bank's contractual relations with Clarence growing out of the loan in question took that form. The agreement explicitly provided for appellant's *endorsement* of Clarence's promissory note, and not for his *guaranty* of payment of the indebtedness in some other form. It clearly contemplated the endorsement of a renewal note to be made by Clarence, and thereafter a series of renewals in negotiable form during the contract period. It may very well be that the designed scheme of the agreement was to provide, during the contract term, paper negotiable in form, to permit of its rediscount or pledge as collateral in event of an exigency compelling that course. But be that as it may, and whatever the purpose, such was the contract of the parties, and we must enforce it as it is written. It was their privilege to cast their agreement in the form mutually satisfactory, provided no rule of law or public policy was thereby infringed.

Moreover, the parties themselves so construed the contract. The term of the initial note endorsed by appellant was six months. There were three successive renewals, including the one in suit—one for six months and two for three months each. The parties thus evinced an intention and purpose to

adopt the customary renewal procedure in "carrying along" the loan, and, in these circumstances, we are constrained to adopt the interpretation so placed upon the agreement. The interpretation of the contract given by the parties themselves, as shown by their conduct, such as their acts in partial performance, will be adopted by the courts. *Basic Iron Ore Co.* v. *Dahlke, supra; Bellisfield* v. *Holcombe,* 102 *N. J. Eq.* 32; *Reed* v. *Inhabitants of Trenton,* 80 *Id.* 503; *Naughton* v. *Elliott,* 68 *Id.* 259. But where the meaning of the contract is plain, there cannot be a contrary construction by the acts of the parties. *Williston on Contracts,* § 623. It is the established rule in this state that it is only where the language is of doubtful meaning that parol evidence of the practical interpretation by the acts of the parties may be received to remove the doubt. This is termed a secondary rule of construction. Its object is to ascertain the true meaning of the words in a written contract, about which there is doubt. *Stewart* ads. *Lehigh Valley Railroad Co.,* 37 *N. J. L.* 53; *Reed* v. *Inhabitants of Trenton, supra.* The practical construction thus given by the parties is a clue to their intention, and is admissible for this purpose solely, where the language employed permits of more than one construction. The most recent statement of the rule is that if the conduct of the parties, subsequent to a manifestation of intention, indicates that all the parties placed a particular interpretation upon it, that meaning is adopted *if a reasonable person could attach it to the manifestation.* 1 *Contracts A. L. I.,* § 235. But while the acts of the parties cannot support a construction contrary to the plain meaning of the language used, such conduct may be evidence of a subsequent modification of their contract. 1 *Contracts A. L. I.,* § 235; *Williston on Contracts,* § 623.

And thus is answered also the contention that appellant was obliged only to endorse the first renewal note. Such a construction would be manifestly unreasonable. In fixing the term of this note at six months, the parties clearly signified a mutual intention and purpose to "carry along the loan" by a series of renewals during the contract term of two years.

And there is likewise no merit in the claim that the bank, by preparing and tendering to appellant and his son two subsequent renewal notes, assumed the obligation to do so thereafter. The evidence tended to show this course was pursued for the convenience of the parties, and not under circumstances that relieved appellant of his contractual duty in the premises. Moreover, as we shall point out, there was testimony that the bank, at the maturity of the note, tendered a renewal note to appellant, and that he unjustifiably refused to become a party to it. There was evidence also that the bank advised him that it would take a renewal note in any form agreeable to him, and that he declined to avail himself of the offer.

Now, as to the effect of the bankruptcy of Clarence: It is insisted that, notwithstanding the adjudication in bankruptcy, appellant was required only to *endorse* a renewal note made by Clarence, and that he was therefore justified in refusing to become the maker of one of the renewal notes tendered by the bank. This contention is fallacious. While Clarence was not, by reason of the adjudication in bankruptcy, disqualified from becoming a party to a renewal note, he was under no obligation to do so, and upon his failure or refusal to become a party to a renewal of the note in suit, the obligation of appellant, by virtue of his contract of endorsement, became an absolute one, subject to the exercise of his contractual right of renewal.

An endorser without qualification engages that, on due presentment, the negotiable instrument shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent endorser who may be compelled to pay it. 3 *Comp. Stat.*, *p.* 3743. The contract of an endorser is separate and distinct from the contract contained in the note. It imposes a liability independent of that assumed by the maker. The endorser without qualification of the ordinary promissory note undertakes to pay the holder the amount thereof only if the maker fails to do so upon due

presentment to him for payment, and due notice of non-payment is given the endorser. The endorser's liability is therefore contingent on the default of the maker and the taking on dishonor of the requisite statutory proceedings. It is a conditional liability, and substantial compliance with the provisions of the Negotiable Instrument act (3 *Comp. Stat., pp.* 3743 *et seq.*), relating to presentment, demand for payment, and notice in the event of dishonor, is an indispensable requisite to absolute liability. On protest and notice, in compliance with the mandate of the statute, an endorser's liability becomes absolute independent of that of the maker. He becomes a principal debtor.

Here the statutory requirements on dishonor were met, and appellant's obligation to pay thereupon became absolute and unconditional, subject to the terms of the agreement which required the bank "to carry the loan along" for the specified period, but with equal force bound appellant to renew the note in accordance with its terms. The bankruptcy of Clarence did not discharge appellant's liability, nor modify in any degree the terms of his contract with the bank. He could not, for obvious reasons, insist upon a renewal note made by Clarence, and the bank would not have been justified in demanding such a note. There had been an adjudication in bankruptcy, and his obligation, in the event of the usual order of discharge, would be released. But appellant's obligation under the contract remained unimpaired—one that must needs continue to be evidenced in the manner stipulated, *i. e.,* by a negotiable promissory note.

It is also urged that if there were a duty resting upon appellant to tender renewal notes, there was "no repudiation of that duty which would warrant respondent in ignoring its agreement to carry the loan for two years." It is here claimed that while there was evidence that appellant and his son did not tender a renewal note to respondent, there was no proof of their refusal to "sign" a renewal note. But there was such evidence. This point seems to be predicated upon the unwarranted assumption (as we shall hereafter point out in dealing with one of the rejected requests to charge), that

appellant was justified in refusing to sign both the notes tendered by the bank. Moreover, there was evidence that the bank offered to take a note in any form agreeable to him.

And in these circumstances there was no prejudicial error in the instruction that it was incumbent upon appellant and his son to tender a renewal note made and endorsed as the note in suit. The criticism of this passage of the charge is not that it imposed upon appellant the unwarranted burden of tendering a note made by Clarence, but that it required him to tender a renewal note at all. Appellant maintains here that, if the contract required a renewal, it should have been made by Clarence, regardless of the adjudication in bankruptcy. And in this connection it should be observed that appellant submitted evidence that a note made by Clarence, and endorsed by him, was tendered to the bank and refused; that the bank, in contradiction, presented evidence of its willingness, conveyed to appellant, to accept a note in this or any other form satisfactory to him, and that this issue of fact was submitted to the jury for determination under instructions that required a finding for appellant if it was resolved in his favor.

The next insistence of appellant is that, assuming an obligation upon him to tender a renewal note, its breach "was not a sufficient excuse for plaintiff's refusal to carry the loan." It is said that this was an independent obligation, or a subsidiary promise, and "was not of such serious moment as to excuse the plaintiff from the continued performance of its promise to carry the loan along for two years." Reliance is placed upon the line of cases which hold that where there are mutual promises, and the time for performance by one party may arrive before the time for performance by the other, the latter promise is an independent obligation and not a condition precedent of the former, and its non-performance does not constitute a bar to an action upon the former promise. *United and Globe Rubber Manufacturing Co.* v. *Conard,* 80 *N. J. L.* 286; *Kinney* v. *Federal Laundry Co.,* 75 *Id.* 497.

This rule is clearly not applicable. Here the action was upon a note which had matured. Upon the maker's default

the requisite statutory proceedings on dishonor were taken, and appellant's liability as endorser became fixed and absolute. He was required, by virtue of his contract of endorsement, to pay the amount thereof to respondent, subject to his right to renew the note pursuant to the terms of the contract obligating the bank to "carry the loan along" for the term specified. He did not choose to exercise this contractual right; in fact, according to respondent, he made it quite clear that he would not do so. Respondent's right to enforce payment of the matured obligation is in these circumstances evident. Appellant's endorsement of the note, after all, created the obligation. He was obliged to pay the note according to its tenor, if the maker defaulted and the statutory proceedings on dishonor were taken.

The provision for paper negotiable in form was not minor in character, but a substantial one that, for reasons deemed adequate by the parties, was made of the essence of the agreement. The contract, as thus construed, exhibits an intention to make these promises dependent. The obligation of the bank to "carry the loan along" for the contract period depended upon the performance of the undertaking to renew the note at maturity. This is a term that goes to the root of the matter, and must be regarded as a condition precedent. The tendency of modern decisions is to hold promises mutually dependent. The order in which the things are to be done, it would seem, is now a significant, if not the controlling, factor. While the "older cases lean to construe covenants of this sort to be independent, contrary to the real sense of the parties and the true justice of the case" (*Glazebrook* v. *Woodrow,* 8 *T. R.* 366), the interpretation of such promises now rests upon "the good sense of the case and the order in which the things are to be done." *Morton* v. *Lamb,* 7 *Id.* 125. The underlying test is the intention of the parties. Parties may regard as essential a matter which is seemingly of very little importance, and if they sufficiently express an intention to make the literal fulfillment of such a thing a condition precedent, such an intention will be effectuated. And the converse of this proposition is likewise the rule. *Bettini* v. *Gye,* 1 *Q. B. D.* 183; *Williston on Contracts,* § 824.

The next point made by appellant is that there was error in the trial judge's refusal to charge that if respondent, prior to March 28th, 1932, had informed Clarence that it would not accept, if tendered, a renewal of the note in suit, and the latter had conveyed this information to appellant, a tender of a renewal was not required. But this was charged in substance, and more is not required. The jury were instructed that if respondent "gave the defendant to understand" that a renewal note would not be accepted, its tender was excused. The criticism that this would impart to the jury the notion that any information received from respondent in this regard "had to be direct with defendant to be binding upon plaintiff" is captious. The court referred to the conflict in the evidence given by Clarence and one of the bank's officers, in regard to the willingness of the parties to renew the note, and submitted to the jury the determination of the issue thus raised in language that could not be misunderstood. It was charged that if "the officer of the plaintiff * * * did state to the defendant that it, the bank, would not accept any renewal note whatever, but demanded payment or the deposit of collateral," appellant and his son were not required to tender a renewal.

Lastly, it is insisted that there was error in the denial of the request to charge that "an ordinary endorser on a promissory note is entitled to due presentment, protest, and notice thereof," and that appellant was not required to "endorse" either of the notes presented by respondent, because they contained a waiver of the foregoing, and therefore "would have changed his contract." But this criticism lacks substance. The jury were instructed that appellant was not obligated, by his contract, "to subscribe to any agreement to waive presentment, notice of dishonor, of any note so *endorsed* by him." Beyond that the request embodied an erroneous proposition. Counsel's argument overlooks appellant's then relation to respondent. His liability as endorser had become fixed and absolute, and these stipulations in the notes submitted by the bank did not in any degree enlarge or vary his contractual obligation.

Judgment affirmed.

618

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, HEHER, KAYS, HETFIELD, DEAR, JJ. 10.

*For reversal*—THE CHIEF JUSTICE, DONGES, PERSKIE, VAN BUSKIRK, JJ. 4.