I. TANNENBAUM SON & COMPANY, A CORPORATION, PLAINTIFF-APPELLANT, v. ONIFRIO TAGLARENI, JAMES TAGLARENI AND SALVATORE TAGLARENI, PARTNERS TRADING UNDER THE FIRM NAME OF UNION WET WASH LAUNDRY COMPANY, DEFEND-ANTS-APPELLEES.

Argued May 7, 1935—Decided July 9, 1935.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the appellant, *McDermott, Enright & Carpenter* (*Charles S. Kuebler,* of counsel).

For the appellees, *Verga & Verga* (*Julius A. Kepsel,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. The agreed state of case discloses that counsel for the respective parties have stipulated that the sole question requiring decision is whether the defendants were required, under their written contract with the plaintiff, to procure their insurance for public liability and workmen's compensation through the latter as their broker.

The stated question arises out of the written contract, dated April 1st, 1933, made between the respective parties. This contract is lengthy and it will serve no useful purpose to restate it in detail. Suffice it to say that by its general terms the plaintiff agreed to install at its own cost an automatic sprinkler system in the defendants' premises located in Jersey City. The defendants in turn agreed during the term of the contract, from April 1st, 1933, to December 31st, 1943, to procure certain policies of insurance through the plaintiff as their broker. Defendants agreed (first paragraph) "to order, apply for, procure and accept policies of fire insurance * * * on merchandise, machinery, furniture, fixtures and improvements of the assured * * * in or on the buildings and premises situate and known as 474-476 Grand Street, Jersey City, * * * and upon the said buildings and premises and upon the rents of said buildings and premises, and upon the use and occupancy of said buildings and premises, and the use and occupancy of the business conducted therein and thereon. Said policies to be at all times in amounts at least equal to the full value of said property and items respectively, and at no time less than Twenty Five Thousand 00/100 dollars ($25,000.00)."

Plaintiff installed the sprinkling system. Defendants concede that they were obligated to effect the insurance enumerated as aforesaid through the plaintiff and accordingly consented to the entry of judgment on the first and second counts, which embraced such insurance. The third count of the demand presents the question in issue. Were the defendants obliged to procure their public liability and workmen's compensation insurance through the plaintiff?

Paragraph seven of the agreement provided:

"The assured covenants and agrees that during the period of this contract it will, through the broker as its agent or broker, order, apply for, procure and accept policies for all its insurance of every kind and description which it may desire or require, in addition to the insurance which it is obligated to accept and carry under the first paragraph hereof. All such insurance as the assured is not obligated to accept and carry under the paragraph First of this contract and at the fixed rates provided in paragraph Second hereof, is for convenience of designation called additional insurance, and embraces every and all kinds of insurance which the assured may *desire or require on any property, items, effects, privileges, rights or immunities wherever the same may be located or situated.* For the purpose of illustration (but not limitation) such additional insurance is declared to include floating, casualty, *burglary, liability, marine, manufacturers' floater, plate glass and fire insurance. For all such additional insurance or renewals thereof the assured shall pay on demand* to the broker the premium appearing in each case on the policy procured, originally or as a renewal, by the broker and delivered to the assured. Provided, however, that if the broker shall fail or refuse to furnish to the assured any such aditional insurance within fifteen days after a written request therefor, then only and thereupon the assured may procure the additional insurance not so furnished by the broker, from other sources, without being liable for commissions thereon to the broker.

"The intent hereof is that the assured having definitely bound itself to accept and carry at fixed rates the insurance mentioned in paragraph First hereof, further agrees that the broker shall have, in addition thereto, the right as broker to place any other insurance controlled by the assured at any place, so that the broker can make the customary commissions thereon allowed by insurers to brokers, and that only as and when the broker is unable or unwilling to procure such additional insurance, shall the assured obtain it through other agencies or sources. Provided that the amount of such additional insurance, or any part thereof, shall always be at the option of the assured."

Defendants admit that they need and have procured insurance covering public liability and workmen's compensation liability; that such policies were furnished by the plaintiff to them during the year 1933 and were accepted and paid for by them; that when like policies were delivered by plaintiff for the year 1934, they refused to accept them. Defendants contend that they merely effected the public liability and workmen's compensation policies during 1933 through the plaintiff not because they were obliged to do so under the agreement of April 1st, 1933, but rather did so "of their own volition."

The trial judge, construing the agreement, rendered judgment in favor of the defendants. In so doing, we think he fell into error.

In our opinion there is no ambiguity in the terms of the contract. The terms are clear and definite; each provision has a distinct significance. The mutual benefits contemplated by the parties to the agreement are obvious. And, as part consideration of the undertaking, defendants obligated themselves to procure the type of insurance specifically set forth in paragraph seven of the agreement in addition to those set forth in the first paragraph thereof. There is nothing uncertain about it. The law applicable therefore in construing the contract is clear.

In *Rogers* v. *Colt,* 21 *N. J. L.* 704, the Court of Errors and Appeals said:

"The contract must undoubtedly be construed according to the intention of the parties. But that intention is to be gathered from the contract itself. If there be no ambiguity in the contract; if the contracting parties have declared their intention in plain and unequivocal language, there can be no construction against the words of the contract. We may not alter the terms which the parties themselves have adopted, or make a new contract for them. The construction must be agreeable to the common understanding of the terms used, without regarding technical meaning or grammatical propriety. And it must be upon the whole contract, so that one clause or phrase may qualify, enlarge, restrain or even totally defeat another."

The instant case is not of the type which requires the construction given to contracts referred to in *Bellisfield* v. *Holcombe,* 102 *N. J. Eq.* 20, in which the recitals and operative parts of the instrument are ambiguous; there are no recitals in the contract in question as distinguished from operative clauses in a contract. Nor can the wording of the seventh paragraph be brought within the rule of construction (*ejusdem generis*) that when words of a particular description are followed by words of a general import, the latter can be held to include only things similar to those specifically named.

Even were we to assume that the terms of the contract were ambiguous, nevertheless, it would not, under the proofs herein, affect the result. For the parties have given a very strong inclination or clue of their intention in the premises. As already stated the plaintiff in 1933 delivered to the defendants and the latter accepted and paid for liability and workmen's compensation policies, as contemplated by the seventh paragraph of the contract. But appellees urged, notwithstanding their past action, that under the case of *Stewart* v. *Lehigh Valley Railroad Co.,* 37 *N. J. L.* 53, 55, they are not precluded from insisting on the proper and true legal construction.

In the case of *Bellisfield* v. *Holcombe, supra,* the late Chancellor Walker said:

"Where terms, used in a written contract, are themselves susceptible of definite legal construction, the fact that the parties have adopted and acted on an erroneous construction of the contract will not preclude them as to transactions not clear, from insisting on the proper and true legal construction. *Stewart* ads. *Lehigh Valley Railroad Co.,* 37 *N. J. L.* 53, 55. And the practical construction placed upon the contract, as shown by the conduct of the parties and the partial performance, is a clue to their intention, where more than one construction of the language is permissible. *Basic Iron Ore Co.* v. *Dahlke,* 103 *Id.* 635."

In the case of *Basic Iron Ore Co.* v. *Dahlke, supra,* the Court of Errors and Appeals, by Mr. Justice Black, said:

"The cardinal rule for the construction of a written con-

tract is to ascertain and give effect to the mutual intention of the parties. 6 *R. C. L.* 835, § 225; 13 *Corp. Jur.* 521, § 482 (2). So, to ascertain the intention of the parties, if more than one construction of the language is possible, the circumstances surrounding the transaction may be considered, as well as the written document. *Fletcher* v. *Interstate Chemical Co.,* 94 *N. J. L.* 332; 6 *R. C. L.* 849, § 239.

"The trial court in reaching a result, resorted to the practical construction placed upon the contract, as shown by the conduct of the parties, such as their acts in partial performance; such a construction is entitled to great weight, if not controlling, in determining its proper interpretation. The acts done under it are a clue to the intention of the parties. *Camden, &c., Land Co.* v. *Lippincott,* 45 *N. J. L.* 405, 418; 13 *Corp. Jur.* 546, § 517 (23)."

Compare, *Blouch* v. *Stevens,* 106 *N. J. L.* 488, 491; *Halverson* v. *Simpson,* 110 *Id.* 100, 102.

Thus, in either event, the plaintiff was entitled to recover. Judgment is reversed.