CAMDEN COUNTY CIRCUIT COURT.

EVELYN CROFT, PLAINTIFF, v. THOMAS W. BUNTING, WILLIAM H. TIEDEKEN, THEODORE C. TIEDEKEN AND EARL C. TWITCHELL, DEFENDANTS.

Decided November 17, 1937.

For the plaintiff, *Joseph Beck Tyler.*

For the defendants: *Boyle & Archer* (*William T. Boyle*), and *Ralph N. Kellam.*

PALMER, C. C. J.   Four cases in which the above named plaintiff is the plaintiff in each one and the above named defendants the respective defendants in each case, have been submitted to the court upon testimony, stipulations and briefs. The suits are to recover upon promissory notes each one signed by a separate defendant, dated December 16th, 1930, payable five years after the date thereof, at the office of Joseph H. Carr, pursuant to an agreement bearing the same date signed by the plaintiff and defendants.   The notes are identical except as to the amounts, which are different in each case.

The testimony shows that the plaintiff is the present holder of these notes.   Each note contains the following memoran-

dum: "Pursuant to agreement dated December 16th, 1930." This agreement is offered as part of the plaintiff's case. No testimony was presented by the defendants other than certain portions of the file of a foreclosure suit. The determination of the liability of the defendants on their respective notes depends entirely upon the interpretation to be placed upon this agreement of December 16th, 1930.

In the agreement the defendants, together with some other persons, are designated as the "Moran Group," which term will be used in this memorandum. The agreement recites that the "Moran Group" had procured an offer in writing for the sale to the plaintiff for the sum of $87,500 of a certain bond and mortgage made by the plaintiff to Ephraim T. Gill, dated March 26th, 1923, covering certain lands in the borough of Barrington, in the county of Camden; that there was then due on said bond and mortgage with then existing costs of foreclosure, the sum of $115,000. It further recites that the plaintiff desired to destroy the bond which was her personal obligation, that accompanied said mortgage, in order to eliminate any future liability to respond for any deficiency that might thereafter be incurred on a foreclosure of said mortgage, and that the defendants, together with the "Moran Group," were stockholders in Haddonstock Corporation, the then owner of the lands covered by the mortgage, and further, that the members of the said "Moran Group" had interests in mortgages made subsequent to the date of the mortgage here in controversy.

The agreement will be analyzed in paragraphs, as follows:

1. The agreement provides that the plaintiff, upon acquiring said bond and mortgage, might destroy the bond without impairing the validity of the mortgage, and the "Moran Group" undertook to obtain an agreement from the Haddonstock Corporation recognizing the validity of the mortgage, notwithstanding the destruction of the bond and would procure further a declaration from the Haddonstock Corporation that there was then due on said mortgage at least the sum of $87,500 with interest from December 16th, 1930.

2. There was to be no merger of the mortgage as a result of this agreement.

3. In this paragraph the plaintiff agrees to sell and the "Moran Group" agrees to buy said mortgage for the sum of $43,750 and to pay for the same within five years from the date thereof, and to pay interest semi-annually on said sum of $43,750. It then apportions the proportion of this sum to be paid by the several members of the "Moran Group."

4. This paragraph provides that in the event of the default of any member of the "Moran Group" in paying his share of the purchase price and interest on such purchase price, he should lose his share or interest in the mortgage, and the other members of the "Moran Group" were to take up such defaulting member's interest.

5. The fifth paragraph stated that the plaintiff should be under no obligation to assign the bond with the mortgage when conveyed to the "Moran Group." Obviously if the bond was destroyed there could be no assignment of it.

6. The sixth paragraph states that inasmuch as the plaintiff would sustain a loss by the sale of this mortgage to the "Moran Group," the members thereof agreed that they would make up such loss if and when they received dividends on their stock in the Haddonstock Corporation, and they agreed to pay to the plaintiff such loss if and when they received two-thirds of their actual investment in the Haddonstock Corporation and in their mortgages on its lands.

7. The seventh paragraph provides that the obligation of the "Moran Group" under this agreement should remain without respect to whether or not the lands covered by the mortgage should be sold by tax sale or otherwise.

8. The eighth, ninth and tenth paragraphs of the agreement relate to details which have no bearing upon the present controversy.

11. The eleventh paragraph limits the amount to be paid to the plaintiff to the sum of $87,500, the amount paid by her for the bond and mortgage, but that such limitation should not operate as reducing the amount alleged to be due as prin-

cipal and interest on the said mortgage so far as the "Moran Group" was concerned. This provision gave to the "Moran Group" as against the Haddonstock Corporation, the owner of the lands, the right to claim and collect the full face value of the mortgage.

12. Paragraphs twelve to eighteen inclusive, regulate the details of the management of the land covered by the mortgage and have no bearing upon the present controversy.

19. This paragraph provides that as long as the "Moran Group" is not in default in the obligations hereby imposed, there would be no foreclosure of the mortgage, nor call for its payment. This was designed for the protection of the defendants and the Haddonstock Corporation against probable foreclosure of the mortgage so that there would be no hindrance to the further development and sale of the lands covered by the mortgage.

The testimony shows that the plaintiff acquired the bond and mortgage in question and presumably destroyed the bond which accompanied said mortgage, and that the "Moran Group" for a period of two years thereafter paid interest upon the purchase price of the mortgage in accordance with the terms of the agreement, that is, until December 16th, 1932. That thereafter the plaintiff foreclosed the mortgage and organized a corporation to take title upon the foreclosure sale which was for a nominal consideration.

The question to be determined is the liability of the defendants to respond for the amount of their respective notes, which question must be determined by an interpretation of the terms and conditions of the agreement and the objects that it sought to accomplish. This is an integrated bilateral agreement.

"The ascertainment and effectuation of the intention of the parties, as manifested by the language employed and the objects to be accomplished are the ends to be served in the interpretation of written contracts." *Corn Exchange Bank* v. *Taubel,* 113 *N. J. L.* (at *p.* 609) ; 175 *Atl. Rep.* 55.

The purposes and objects sought to be accomplished by

this agreement were first as to the plaintiff to absolve her from future probable personal liability on her bond in the event of a foreclosure of the mortgage by the then holder, and a deficiency decree entered against her upon which suit might be brought, and to insure to her the amount that she paid for the mortgage, namely, $87,500.

As to the defendants and other members of the "Moran Group," the object of the agreement obviously was to secure to them control of the first mortgage on their own property in the sense that they were stockholders in the Haddonstock Corporation, the then titleholder, and to make secure to them the interests that they had in subsequent mortgages on this same land, and to obviate the then threatened foreclosure proceedings which would have in all probability resulted in severe losses to them. The plaintiff was to benefit by the elimination from future consideration of her bond, and obviously she was apprehensive as to this future condition, and to the defendants who then were threatened with the foreclosure of the first mortgage on their lands they were thus able to control, to some extent at least, such a foreclosure, and thereby enabled them to proceed with the further development and sale of the lands covered by the mortgage. The existing condition had been brought about by the then economic condition of the country, making it practically impossible to proceed further with the land development schemes. And the agreement would at least give to the defendants further time in the hope that changing conditions in the then future would enable them to proceed further with their land development schemes.

Obviously, the plan failed so far as the defendants are concerned, as the file in the foreclosure suit before me shows that the mortgage held by the plaintiff was foreclosed and that the members of the "Moran Group" were made parties defendant to said foreclosure suit by reason of subsequent mortgages held by them, and that the result of the foreclosure suit was to deprive the members of the "Moran Group" of all interest in the lands in question by reason of the sale

under the first mortgage. So that to them the scheme was a failure and they lost not only their interest in the stock of the Haddonstock Corporation, but also whatever interest they had as holders of subsequent mortgages.

It is argued that there has been a default on the part of the members of the "Moran Group." Under the provisions of the seventh paragraph of the agreement, which provided that the obligation of the defendants was to remain, regardless of whether or not the lands covered by the mortgage were sold at tax sale or otherwise, and it is argued that they are bound to pay the note regardless of the fact that the sale that has taken place was a foreclosure sale. It is argued that the phrase, "Sold at tax sale or otherwise," includes a sale under foreclosure proceedings. I am unable to agree with this interpretation of that language. A "tax sale" would be subject to redemption by the owner, while the sale under the foreclosure proceedings to all practical purposes put an end to the legal existence of the mortgage, and there could be, therefore, no subsequent delivery of the mortgage to the defendants under the terms of the agreement.

It is further argued that there has been a default and a breach of the contract on the part of the members of the "Moran Group" by reason of the failure to pay interest on the purchase price for the mortgage after December 16th, 1932, and that by reason of such breach the plaintiff can insist upon the payment of the amount of the notes involved in this litigation. This breach I take to be only a partial breach of the contract, and there was given to the plaintiff a legal remedy for such a breach; that is, the right to bring suit for the interest due upon the purchase price of the mortgage at the time that there was a failure to pay such interest.

It is to be observed that the agreement does not provide for any acceleration in the time for the payment of the principal by reason of the failure to pay interest when due. This failure to pay the interest by the defendants was not such a material breach of the terms of the contract as to excuse the plaintiff from performing her part of the contract, namely,

to deliver the mortgage at the time called for its delivery, that is, five years after the date of the agreement. The plaintiff in this suit abandons all claim for interest alleged to have been due periodically, and the default in the payment of which she alleges was a breach of the contract, and seeks to recover now only interest from December 16th, 1935, the due date of the note and the time when the plaintiff was to deliver the mortgage to the members of the "Moran Group." This would seem to indicate that the plaintiff did not regard and does not now regard the failure to pay the interest by the defendants upon the respective due dates thereof as a breach of this contract.

I am of the opinion that the failure on the part of the defendants to pay interest periodically upon the purchase price of the mortgage was only a partial breach of the contract and not so material as to absolve the plaintiff from her obligation to deliver the mortgage on December 16th, 1935. *Blackburn* v. *Reilly,* 47 *N. J. L.* 290; *Vine* v. *Kennedy,* 2 *N. J. Mis. R.* 774.

If there was then only a partial breach of the contract on the part of the defendants by reason of their failure to pay interest periodically when due, which breach was not material so far as the obligations of the plaintiff to deliver the mortgage and demand the purchase price on December 16th, 1935, is concerned, then the plaintiff cannot recover in this suit, because at the time called for by the terms of the agreement for the delivery of the mortgage she, by her affirmative action in foreclosing that mortgage, has made it impossible for her to comply with the terms of the agreement.

The foreclosure of the mortgage and the sale thereon destroyed the mortgage as a legal existing obligation, and because of such destruction it was beyond the power of the plaintiff to fulfill her part of the agreement by making delivery of the mortgage at the time called for in the agreement. The defendants are therefore entitled to judgment in their favor in each case.