**PACKARD ENGLEWOOD MOTORS, Inc.**

v.

**PACKARD MOTOR CAR CO.**

**Civ. A. No. 511–51.**

United States District Court
D. New Jersey.

Nov. 24, 1953.

Seuffert & Elmore, by Charles Fishberg, Englewood, N. Y., and Irving Mariash, New York City, for plaintiff.

Carpenter, Gilmore & Dwyer, by James P. Beggans, Jersey City, N. J., for defendant.

MODARELLI, District Judge.

This is an action by plaintiff, a Packard automobile dealer corporation, which

operates under a year-to-year franchise agreement with the defendant-manufacturer, Packard Motor Car Company. The action is not based on the franchise contract, but is to recover alleged loss of profits resulting from defendant's alleged breach of contract to deliver in the year 1948 ninety-seven so-called bonus cars to plaintiff. The case was tried without a jury.

By mimeographed letter dated December 18, 1947, from defendant's Detroit, Michigan office, addressed to all Packard Dealers in the New York zone, defendant offered a special inducement to its dealers by which they could obtain bonus cars in addition to their normal allotments from defendant. The offer was "for each ton of scrap gray iron furnished us by a Dealer, one additional Packard car will be alloted to" the dealer. The offer-letter recited that because of the shortage of cast iron scrap, many cars were "not being produced that could otherwise be shipped to dealers." Also set forth in the letter were certain general instructions relating to the type of scrap needed, shipping and payment. A follow-up letter setting forth detailed shipping instructions for transporting the scrap was mailed under date of December 30, 1947, by defendant's New York zone office to the dealers.

Plaintiff accepted the offer by shipping fifty-three tons of scrap on June 26, 1948, and forty-four tons on July 27, 1948, which shipments were received and approved by defendant in Detroit. Thus, the parties entered into a contractual relationship and the plaintiff became entitled to ninety-seven bonus cars from defendant.

The issue is clear: When or during what period of time was defendant obligated to deliver to plaintiff the bonus cars? The offer did not specify any date or period of delivery; nor did any writing pertaining thereto pass between the parties. Plaintiff argues that defendant was obligated to deliver all of the cars in the year 1948; defendant argues that it did not obligate itself to deliver at any specified time. In fact, actual deliveries were during the months of October, November, December, 1948, and January, 1949, totaling thirty-four bonus cars. Thus, plaintiff seeks damages for alleged loss of profits resulting from defendant's failure to deliver to plaintiff sixty-three bonus cars in the year 1948.

■ Jurisdiction in this case is based solely on the diversity of citizenship of the parties. New Jersey substantive law applies. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, including its conflict of laws rules, Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85, L. Ed. 1477.

Defendant contends that it made no promise to deliver all of the bonus cars during any specified period of time. Such an argument, in effect, is that there is no contract between the parties—an agreement to deliver at will is an illusory contract in that the apparent promisor has not promised that he ever will perform. Thus, at the outset, it is necessary to decide whether there is a contract.

While counsel have not considered the problem of conflict of laws, the facts in this case present such a question in that the parties negotiated and acted in New Jersey, Michigan, and New York. And although, as will be discussed, New Jersey's substantive and conflict of laws rules clearly govern this case, proper analysis requires this court to set forth its reasoning.

■ What law would a New Jersey State Court choose as the governing law on the question of whether or not a contract exists? Counsel have cited no cases to aid the court and none directly in point have been found. The general rule as to whether or not the acts of the parties constitute a binding legal obligation is that the law of the place of the making of the contract governs. Specialties Development Corp. v. C-O-Two Fire Equipment Co., 3 Cir., 207 F.2d 753; Avery v. Sielcken-Schwarz, 1949, 5 N.J.Super. 195, 68 A.2d 635; James H. Rhodes & Co. v. Chausovsky, S.Ct.1948, 137 N.J.L. 459,

60 A.2d 623; Polyckronos v. Polyckronos, 1939, 8 A.2d 265, 17 N.J.Misc. 250; Hinkly v. Freick, E. & A.1914, 86 N.J.L. 281, 90 A. 1108, L.R.A.1916B, 1041; Goodrich on Conflict of Laws (3d Ed. 1949), Section 110.

■■ In the case at bar, the contract was made in New Jersey. By the terms of the offer, plaintiff had to furnish scrap gray iron for which defendant offered to pay "the current Detroit market price" and "transportation f. o. b. the Dealer point to Detroit." The contract was made the moment the plaintiff's collection of scrap left its control pursuant to instructions from defendant's zone office. At that moment, plaintiff had performed and thereby accepted the unilateral offer of defendant. It is settled law that a contract comes into existence when and where the last act is done to make it a binding obligation upon the parties thereto. Northampton Mutual Live Stock Ins. Co. v. Tuttle, 1878, 40 N.J.L. 476. Even if it be argued that the contract was made in Michigan in that the defendant's offer contained certain specifications pertaining to the type of scrap needed, so that there could be no performance-acceptance by plaintiff until and unless defendant inspected and approved the scrap sent by plaintiff, nevertheless, the Michigan law is the same as New Jersey law as to when there must be performance when the contract is silent; the law in both states is that performance must be within a reasonable time. Wemple v. B. F. Goodrich Co., E. & A. 1941, 126 N.J.L. 465, 19 A.2d 692; Bollenbacher v. Reid, 1908, 155 Mich. 277, 118 N.W. 933.

■ The rule requiring performance within a reasonable time does not prohibit this court from obtaining assistance, in deciding what is a reasonable time, from the subsequent, practical interpretation of the contract by the parties thereto. This is not a case where one party has aided his cause by making an interpretation in his own favor. "The practical construction given to a contract by one of the parties may be used in support of the construction now urged in court by the other party." Corbin on Contracts, 1951, Vol. 3, Section 558, p. 141; Mantell v. International Plastic Harmonica Corp., E. & A.1947, 141 N.J. Eq. 379, 55 A.2d 250, 173 A.L.R. 1185.

In order to understand the conduct of the parties, it is necessary to describe the customary procedure by which the plaintiff-dealer obtained cars from the defendant-manufacturer. Plaintiff would receive an allotment notice from defendant's zone office in New York to the effect that either regular or bonus cars had been allotted to plaintiff and that it should place orders therefor; whereupon plaintiff would place orders for the shipment of cars. Although Traendly, plaintiff's president, testified that the defendant would send cars without orders, he admitted that ordinarily defendant would await orders from plaintiff before sending any cars.

It is important to note that Traendly testified that a four to six weeks' period elapsed before delivery on orders was made. As to plaintiff's conduct regarding bonus cars, the undisputed facts are that on December 7, 1948, and on December 12, 1948, George Harrison, the plaintiff's sales manager, who admittedly was authorized to order cars from defendant, ordered bonus cars. Traendly did not criticize Harrison for placing the orders; nor was there any written protest from plaintiff to defendant regarding defendant's bonus car distributions until December 29, 1949, although Traendly testified that in December, 1948, he personally visited defendant's zone office and appealed for more cars. This testimony conflicts, however, with his testimony that in October, 1948, he had on hand thirty-one cars and delivered twelve; that in November, 1948, he had forty-five cars on hand and delivered twelve; that in December, 1948, he had forty-nine cars on hand and delivered fifteen. While Traendly testified that at the end of November, 1948, his company had on hand thirty-three cars, he insisted that on December 1, 1948, only nineteen cars were on hand. Despite

this obvious conflict in testimony as to the number of cars on hand, it is significant that plaintiff's inventory of cars increased every month during the last quarter of 1948. Furthermore, Traendly testified that the market began to decline in November, 1948 until early spring 1949; that he had more cars than he was able to deliver in November and December, 1948. And Harrison testified that Traendly told him to accept no cars for January "because we had sufficient cars in stock * * * We felt we had sufficient cars under the business conditions of that time, and in the slow winter months we had sufficient cars in stock."

Despite this uncontradicted testimony of the plaintiff's then sales manager, the plaintiff would have the court believe that it expected the delivery of all the bonus cars during the year 1948. It is incredulous. I could well imagine what would have happened if the defendant had "dumped" the balance of sixty-three bonus cars on the plaintiff during the month of December, 1948, without an order from the plaintiff. It must be remembered that Traendly testified that on December 1, 1948, plaintiff had nineteen cars on hand.

Although plaintiff argues that defendant was obligated to deliver all of the bonus cars in 1948, plaintiff ordered four bonus cars in December, 1948, and accepted delivery thereof in January, 1949; and ordered seven bonus cars in December, 1948, for February, 1949 delivery, which orders later were cancelled. I must find plaintiff interpreted its rights under the contract to call for deliveries beyond the year 1948.

As to plaintiff's argument that its acceptance of bonus cars in 1949 was merely a fulfillment of its duty to mitigate damages, such a contention is inconsistent with plaintiff's conduct in cancelling the orders for February, 1949 delivery and remaining silent for four months subsequent to defendant's August 25, 1949 letter requesting plaintiff to submit orders for bonus cars. If plaintiff, as is argued, was in good faith mitigating damages in January, 1949, it acted in bad faith by cancelling orders in February, 1949, and in September, 1949, by not placing orders for bonus cars despite defendant's request.

 It is settled law in New Jersey that where the contract is ambiguous, the practical construction of it as evidenced by the conduct of parties, such as their acts while partially performing, "is entitled to great weight, if not controlling, in determining its proper interpretation." Lippincott v. Content, E. & A. 1939, 123 N.J.L. 277, 8 A.2d 362; I. Tannenbaum Son & Co. v. Taglareni, S.Ct. 1935, 115 N.J.L. 299, 179 A. 633, 636; Thomsen v. Riedel, E. & A.1935, 114 N.J.L. 379, 176 A. 701; Corn Exchange National Bank & Trust Co., Philadelphia v. Taubel, E. & A.1934, 113 N.J.L. 605, 175 A. 55; Albert v. Ford Motor Co., E. & A.1934, 112 N.J.L. 597, 172 A. 379; Basic Iron Ore Co. v. Dahlke, E. & A.1927, 103 N.J.L. 635, 137 A. 423. The contract sued on is not ambiguous in that unclear language is contained therein, but the contract lacks any delivery date terms, which is certainly an obscurity within the purpose of the ambiguity rule.

 Plaintiff argues that the following language in defendant's letter dated December 30, 1947, evidences an intent by defendant to deliver all of the bonus cars in 1948: " * * * we earnestly request the full cooperation of all of you to the end the objective of building as many cars as possible during 1948 be realized." Such language is not a statement of intention to deliver in 1948 to the participating dealers *all* of the bonus cars earned by them; the language is hortatory, not promissory.

 In order to aid the court in interpreting the intent of the parties to a contract where the terms are either ambiguous or, as in this case, there is omitted a specific obligation, the court should consider the conduct engaged in by the parties while they were operating under the contract. Albert v. Ford Motor Co., supra, wherein the court construed an ambiguous contract with the

aid of a letter written subsequent to the date of execution. Restatement, Contracts, (1932) Section 235(e). By its conduct in December, 1948 and January, 1949 in ordering and accepting cars, plaintiff regarded the contract as calling for deliveries at least until February, 1949. From that date until August 25, 1949, there is no record of any correspondence between the parties. On the latter date, defendant wrote to plaintiff: "According to our records, the number of bonus cars to which you are still entitled is: *51*" and requested that plaintiff order and specify the bonus cars of each model ordered the bonus cars not required then or later, and those bonus cars as to which later orders might be placed. Plaintiff did not place any orders as requested by defendant, and remained silent until December 29, 1949, when the first written protest regarding plaintiff's alleged rights under the contract was sent to defendant. It seems strange to the court that during all of this time Traendly never made any written protest to the defendant nor showed by any overt act his construction of the contract that all cars had to be delivered in 1948. He never sent a letter or telegram to either the New York zone office or to the main office of the defendant in Detroit until the letter of December 29, 1949. This is also incredulous. That is not the way the ordinary reasonable prudent man would have acted under the circumstances. Thus, it must be concluded that the parties themselves, by their conduct, construed the contract as calling for deliveries of the bonus cars at least up to December 29, 1949.

Since pursuant to the customary manufacturer-dealer procedure, I find plaintiff failed to place any order for bonus cars despite defendant's August, 1949 request for such order, plaintiff must be denied damages as I find there has been no breach of contract by reason of defendant's failure to deliver bonus cars promised plaintiff. Plaintiff, in effect, having rejected defendant's tender of performance cannot now recover a remedy for defendant's failure to perform.

The foregoing opinion shall constitute findings of fact and conclusions of law, as required by Fed.Rules Civ.Proc. rule 52, 28 U.S.C.A.

An order may be submitted in conformity with the opinion herein expressed.