## BASIC IRON ORE COMPANY, APPELLANT, v. JOHN H. DAHLKE, RESPONDENT.

### Submitted February 11, 1927—Decided May 16, 1927.

1. The construction of a written contract is a court question.
2. The cardinal rule for the construction of a written contract is to ascertain and give effect to the mutual intention of the parties.
3. In ascertaining the intention of the parties, if more than one construction of the language used is possible, the circumstances surrounding the transaction may be considered, as well as the written document.
4. The practical construction placed upon the contract, as shown by the conduct of the parties and a partial performance, is a clue to the intention of the parties. Letters passing between the parties for this purpose are admissible in evidence.
5. The subject of the controversy in this case is royalties for "tailings" in an agreement under a mining lease of iron ore. The portions of the lease under construction are in the opinion. It was not error for the trial court to direct a verdict for the plaintiff.

On appeal from the Supreme Court.

For the appellant, *Edgar W. Hunt* and *Harlan Besson.*

For the respondent, *John H. Dahlke, per se,* and *Sylvester C. Smith, Jr.*

The opinion of the court was delivered by

BLACK, J. The trial of this case resulted in a directed verdict in favor of the plaintiff for $5,295.28 on the first count of the plaintiff's complaint. This amount was agreed to. The appellant filed sixteen grounds of appeal, which are argued under five points in the brief. The record shows a motion to strike out the amended complaint was denied. All counts in the complaint except the first were abandoned by the plaintiff. The facts in brief from which the dispute arose were these: The suit was brought to recover royalties on the sale of iron "tailings" under two mining leases or agree-

ments made with Robert H. Ahles, one dated November 18th, 1901, for a term of twenty years, and the other dated October 23d, 1903, for an extended term of twenty years. The subject is an iron mine covering a tract of land containing two hundred and fifteen acres in Oxford township, Warren county, New Jersey, owned by the plaintiff, John H. Dahlke. The lease was assigned to the defendant company, the Basic Iron Ore Company, on February 14th, 1902. That company continued in possession of the premises for the purposes and under the conditions set forth in the leases. The royalties were changed by agreement on June 18th, 1912 (*Exhibits D 7* and *D 8*); in all other respects the leases remained unchanged. Some time in 1919 and 1920 a new state of affairs developed by the defendant permitting the Berkleigh Manufacturing Company to erect a building on the premises and treat the ore and tailings for the purpose of manufacturing paint. To meet this situation a new agreement dated February 27th, 1920, was executed. The "tailings," the subject-matter of the suit, was one of the products of what is known as the milling process, *i. e.,* refuse from washed iron ore such as rock and other material. A copy of the agreement dated February 27th, 1920, is attached to the complaint and a copy of the lease and agreement dated October 23d, 1903, is attached to the answer as *Exhibit A*. The pertinent part of this latter agreement and lease is, that it provides for the granting, "all the necessary rights and privileges for exploring, mining and conveying away said ores, including the right of way for railroads and other roads," &c. The word "tailings" is not used in this agreement and lease. It is under the second agreement with the defendant dated February 27th, 1920, that the controversy arises and the proper construction to be given to that agreement. The pertinent parts of that agreement are, that after stating the new conditions that gave rise for a new agreement, it provides: "The party of the first part does hereby grant unto the party of the second part, subject to the provisions of this agreement, all his right, title and interest of, in and to all the tailings now lying in said premises from ore heretofore washed or otherwise treated on said premises, and the tailings which may

hereafter be derived from the washing or other treatment of the ore now lying in bank on said premises, and each and all the ingredients thereof; and also the right to conduct or permit to be conducted on any part or parts of the said premises lying southerly of the Thomas Edison railroad any and all operations which may be desirable in the treatment of the said ore in bank or in the treatment of tailings therefrom or the tailings now on said premises, or in the manufacture thereof into paint or paint materials or other materials of any and all kinds whatsoever; and for such purpose or purposes also the right to erect or cause or permit to be erected and maintained thereon buildings, plants and equipment," &c. Then it provides for the payment "to the party of the first part for each and every ton of such tailings [viz., tailings now on said premises and tailings from such ore in bank on said premises as shall be hereafter treated on said premises] so taken and treated or manufactured by the party of the second part the sum of one dollar per ton; and for each and every ton of such tailings sold by the party of the second part to the Berkleigh Manufacturing Company or to others and treated by it or them on said premises twenty-five per cent. of the amount paid therefor by it or them to the party of the second part;" &c.

The sharp question presented for solution therefore is, Is the plaintiff, under the terms of the agreement, entitled to be paid for tailings shipped from the premises at the rate of one dollar per ton? The defendant's claim is, the plaintiff is not entitled to recover anything for the tailings shipped from the premises. The agreement, so it is claimed, operated as a grant of the tailings subject to payment only, in case the plaintiff's premises were used by the defendant or the Berkleigh Manufacturing Company, in the treatment of the tailings for the purpose of manufacturing paint. So, that the meritorious question involved is whether there should be a direction of a verdict for the plaintiff for the amount agreed upon, or whether a directed verdict should be for the defendant? There was no disputed question of fact involved. The construction of the written contract was a court question under our decisions. *Sommer Faucet Co.* v. *Commercial*

*Casualty Insurance Co.,* 89 *N. J. L.* 693; *Downs* v. *New Jersey, &c., Glass Insurance Co.,* 91 *Id.* 523, 525; 6 *R. C. L.* 862, § 249.

The cardinal rule for the construction of a written contract is to ascertain and give effect to the mutual intention of the parties. 6 *R. C. L.* 835, § 225; 13 *Corp. Jur.* 521, § 482 (2). So, to ascertain the intention of the parties, if more than one construction of the language used is possible, the circumstances surrounding the transaction may be considered, as well as the written document. *Fletcher* v. *Interstate Chemical Co.,* 94 *N. J. L.* 332; 6 *R. C. L.* 849, § 239.

The trial court, in reaching a result, resorted to the practical construction placed upon the contract, as shown by the conduct of the parties, such as their acts in partial performance; such a construction is entitled to great weight, if not controlling, in determining its proper interpretation. The acts done under it are a clue to the intention of the parties. *Camden, &c., Land Co.* v. *Lippincott,* 45 *N. J. L.* 405, 418; 13 *Corp. Jur.* 546, § 517 (23).

For this purpose the admission of the letters in evidence passing between the parties was not error. They are *Exhibit P 2* to *Exhibit P 16.* In date, from August 22d, 1923, to November 12th, 1925, and *Exhibit D 1* to *D 6.* In date, from October 23d, 1923, to November 16th, 1925, *Record, p.* 104 to 123. Although it is true that in (*Exhibit D 1*) a letter dated August 30th, 1923, it is stated that "no royalty is due you on the tailings about to be shipped." So, in (*Exhibit D 2*) a letter dated October 23d, 1923, it is stated that such payment "is without prejudice," referring to a shipment made to the Astoria Light, Heat and Power Company. The admission in evidence of these letters was not in conflict with the principle laid down in the cited case of *Stewart* v. *Lehigh Valley Railroad Co.,* 37 *N. J. L.* 53. That case is not in point. But, the admission of these letters in evidence is in harmony with the rules of construction above stated.

*Exhibit P 2* is a letter dated August 22d, 1923, addressed to Mr. Dahlke; it refers "to the royalty you [Dahlke] would be willing to take," and suggests a modification of the price.

It refers specifically to tailings to be shipped, but not *treated* on the premises, to the Astoria Light, Heat and Power Company, at Astoria, Long Island.

In the earlier mining lease there was an unlimited right to the tenant to take and use the iron ore, paying the royalties provided for. It seems quite clear that when new conditions arose, calling for a new contract—that of February 27th, 1920—the contract was intended, between the parties, to cover the whole subject of tailings, those to be used on the premises, as well as those to be shipped. So, the acquiescence of the defendant on the plaintiff's demand by an actual payment on such a basis, whether under protest or otherwise, strongly corroborates this view.

This covers all the points involved in the controversy.

Finding no error in the record, the judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.

*For reversal*—None.