6 N.J. Super. 327 (1950)
71 A.2d 233
JEROME C. MAYER, PLAINTIFF-APPELLANT,
v.
JOHN SULZBERGER, INDIVIDUALLY, JOHN SULZBERGER, INC., A CORPORATION, AND ACME ROOFING AND SUPPLY CO., INC., A CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 21, 1949.
Decided February 10, 1950.
*328 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Milton M. Unger argued the cause for appellant (Messrs. Milton M. and Adrian M. Unger, attorneys).
*329 Mr. Marius Grosso argued the cause for respondent John Sulzberger (Messrs. Grosso & Beck, attorneys) and for respondent Acme Roofing & Supply Co., Inc. (Mr. Ovid C. Bianchi, attorney).
The opinion of the court was delivered by McGEEHAN, S.J.A.D.
On December 8, 1948, the plaintiff brought suit for a declaratory judgment to determine the rights of the parties with respect to the tenancy of premises described as "a one-story brick building located in the rear of premises known and designated as No. 45 North Day Street, in the City of Orange, County of Essex and State of New Jersey, together with the right of way of ingress and egress." The plaintiff, who became the owner of the premises on September 30, 1948, claimed that the tenant John Sulzberger and the subtenant Acme Roofing and Supply Co., Inc., were holdover tenants from month to month after May 31, 1944, or, at best, would become holdover tenants from month to month after May 31, 1949. The defendants claimed that they held under a lease until June 1, 1952. Judgment upholding the defendants' claim was entered in the Superior Court, Law Division.
On May 1, 1942, Colt Brothers, Inc., the then owner, gave the defendant John Sulzberger Co., Inc., a 30-day option "to lease or rent the Brick Garage Trucking Building, rear No. 45 North Day St., Orange, N.J., * * * for a term of one year at $60.00 per month, with an option renewal of four years and an additional five year optional renewal, or a total of ten years. * * *" John Sulzberger Co., Inc., exercised the option, and on May 21, 1942, the parties executed a lease for the premises for one year, beginning June 1, 1942, with a provision that "said tenant shall have the option of extending this lease for a period of four years from June 1, 1943, and thereafter for a further period of five years from June 1, 1947, on the same terms and conditions, and at the same rental."
On April 28, 1943, John Sulzberger Co., Inc., wrote Colt Brothers, Inc., as follows:
*330 "The first year of lease No. 45 N. Day St., Orange, will expire June 1st 1943.
"Rather than renew same for another four year period with present unsettled business conditions, I would like to know if you would change same to another one year period before entering into first five year period, all conditions of lease dated May 21st 1942 to remain the same."
and Colt Brothers, Inc., gave approval, in writing, to the modification.
On February 26, 1944, defendant John Sulzberger wrote to Colt Brothers, Inc., as follows:
"This will notify you that John Sulzberger Co. Inc. on December 29, 1943, assigned to John Sulzberger all its right, title and interest in and to a certain lease between Colt Brothers, Inc. and John Sulzberger Co. Inc. said lease bearing date May 21, 1942, demising premises known as No. 45 North Day Street, Orange, New Jersey. Please take notice that the said John Sulzberger, the assignee of said lease hereby exercises the option of renewal term of said lease for a period beginning June 1, 1944 and ending May 31, 1952."
On the same day, Colt Brothers, Inc., passed a corporate resolution reciting:
"Whereas, Colt Brothers, Inc. has been notified that the lease in the rear of premises No. 45 North Day Street, Orange, New Jersey, has been assigned to John Sulzberger on December 29, 1943, and Whereas, it is the desire of John Sulzberger to lease from Colt Brothers, Inc. the office or store known as No. 41 North Day Street, Orange, New Jersey,
"RESOLVED: That Colt Brothers, Inc. lease to the said John Sulzberger, the office or store known as No. 41 N. Day Street, Orange, New Jersey for a term beginning April 1, 1944 and ending on May 31, 1952, at the monthly rental of $15.00 per month, and it is FURTHER RESOLVED: that the lease hereby submitted be executed by our president or acting president and our secretary and our corporate seal to be thereto affixed."
On the same day, February 26th, the parties executed a lease for 41 North Day Street, which abuts the right of way to the premises in the rear of 45 North Day Street. Acme Roofing and Supply Co., Inc., was made a defendant because it claimed to hold 41 North Day Street and the premises in the rear of 45 North Day Street under a lease dated February 29, 1944, from John Sulzberger, for a term beginning April 1, 1944, and ending May 31, 1952.
*331 The letter of April 28, 1943, was intended to modify the option provisions of the original lease, but the question is what modification resulted.
The plaintiff contends that the meaning of the language used in the modification is plain and that its effect was to substitute a one-year optional term for the four-year optional term of the original lease, thus making the potential term seven years, expiring on June 1, 1949, made up of two one-year terms and a five-year term. From this premise he argues that the letter of February 26, 1944, which purported to exercise an option to renew the lease until May 31, 1952, was either wholly inoperative because it did not exercise any available option, and thus the tenant became a holdover tenant as of June 1, 1944, the date of the expiration of the second one-year term, or, in the alternative, that the attempted exercise of the option should be construed as the exercise of the only available option, namely, to renew to May 31, 1949, and thus the tenant became a holdover tenant on June 1, 1949.
The defendant John Sulzberger contends that the meaning of the language used in the modification is plain or, if not plain, that the parties gave it the same interpretation; that it was intended to substitute a one-year optional term and a three-year optional term for the four-year optional term of the original lease and leave unchanged the further optional term of five years, thus continuing the potential term of the lease for ten years, as originally intended. From this premise he argues that the letter of February 26, 1944, exercised the available option to renew the lease until May 31, 1952. He argues that the parties provided for a leasehold which would potentially be a ten-year term; that they considered the total term as divisible into two five-year periods  the first five-year period made up of a one-year term and a four-year option which was balanced as a unit against "an additional five-year optional renewal;" that the language of the letter "if you would change same to another one-year period before entering into first five-year period" refers to the first five-year period of the ten-year potential term and has the effect of permitting the tenant to exercise an option for one year and an option *332 for three years to complete the first five-year period, rather than requiring him to exercise the option for four years. He also argues that the language "all conditions of lease dated May 21, 1942, to remain the same" was intended to continue the option in the original lease of extending "thereafter for a further period of five years from June 1, 1947."
We think the meaning of the language used in the modification of April 28, 1943, is ambiguous. When the meaning of a contract is not plain, the interpretation given by the parties themselves to the contract, as shown by their acts, will be adopted by the Court and to this end not only the acts but the declarations of the parties may be considered. 3 Williston, Contracts, § 623 (Rev. Ed. 1936); Kingston Trap Rock Co. v. Eastern Engineering Co., 132 N.J.L. 254 (E. & A. 1944). If the conduct of the parties, subsequent to a manifestation of intention, indicates that all the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation. Restatement, Contracts, § 235(e) (1932), N.J. Annot.
The interpretation placed upon the modification by Sulzberger in his letter of February 26, 1944, was that it gave him an option to extend the lease to May 31, 1952. Colt Brothers, Inc., had notice thereof, as evidenced by the acknowledgment of the letter in its corporate resolution of the same day. There is no proof that Colt Brothers, Inc., at any time, placed any other interpretation upon the modification. Colt Brothers, Inc., accepted rent thereafter without any protest about such a construction. On the same day that Colt Brothers, Inc., received the letter of February 26, 1944, it leased to Sulzberger the abutting property at 41 North Day Street for a term of eight years and two months, expiring on May 31, 1952. It appears to us that in such a situation the conduct of Colt Brothers, Inc., is tantamount to an acquiescence in Sulzberger's interpretation. We agree with the Court below that the parties placed the same interpretation upon the modification and that it should be adopted.
The judgment is affirmed.