14 N.J. Super. 515 (1951)
82 A.2d 228
ROSE MOSCOWITZ, EXECUTRIX OF THE ESTATE OF MARTIN MOSCOWITZ, DECEASED, PLAINTIFF,
v.
MIDDLESEX BOROUGH BUILDING & LOAN ASSOCIATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 25, 1951.
*517 Mr. Morris Roth, attorney for plaintiff.
Messrs. Rafferty & Blacher (Mr. Philip Blacher, appearing), attorneys for defendant.
DANIEL J. BRENNAN, J.S.C.
This cause is before the court for determination on an agreed state of facts, stipulated between the parties hereto of the following exact tenor:
"In lieu of oral testimony, it is stipulated and agreed by and between the parties that the following constitutes the agreed state of facts:
1. Plaintiff's decedent, Martin Moscowitz, was in possession and control of a two family dwelling located in Middlesex Borough. Middlesex County, N.J., under a contract to purchase same from the defendant Middlesex Borough Building & Loan Association and was executed by the parties on August 19, 1941. Both apartments in the dwelling were rented and occupied by tenants of plaintiff's decedent.
2. The terms for payment of said contract were: `The balance of said purchase price is to be paid by the Buyer paying the sum *518 of $20 a month on the second Tuesday of each and every month at the office of the Seller in Middlesex Borough, New Jersey; beginning September 9th, 1941, from which is first to be deducted interest on the unpaid balance of the purchase price at the rate of 5%; second, fire and public liability insurance premiums; the balance to be applied in reduction of the purchase price: The Buyer may make larger payments than the said $20 or may pay off the entire balance at any time before due, and when the amount due on the purchase price is reduced to $1,800, the Buyer shall be entitled to receive a deed of conveyance for the said premises and give back in payment of the balance due a good and sufficient mortgage to the Seller.'
3. The contract further provided in the event of default: `It is understood and agreed that in case the buyer becomes in arrear with any of the payments herein agreed to be made, including the fire and public liability insurance premiums, taxes and sewer assessment installments, for the period of sixty days from and after the time when the same are due, the Seller may declare all rights of the Buyer to receive a deed under this contract at an end, and in such case the Buyer shall become a tenant of the Seller under an ordinary monthly letting for a rental of $20 per month, and the parties hereto agree that in such case any District Court may have jurisdiction to remove the said Buyer or any one holding under him. The failure of the seller to exercise its option of revocation in case of one or more defaults shall not preclude the exercise of this option in case of later defaults, and the remedy through the District Court herein mentioned shall not preclude the Seller from any other remedy it may have in law or equity.'
4. The terms for payment, under said contract, were strictly followed, and as a result thereof, in due course, a deed was executed and delivered by the defendant, Middlesex Borough Building & Loan Association.
5. On October 6, 1945, Martha Sullivan and her daughter Catherine Cloos formerly Catherine Sullivan, members of the general public, visited the premises which were the subject of the contract referred to in paragraph one hereof, and in the course of said visit, both were injured.
6. Martin Moscowitz died May 4, 1947, and shortly thereafter Rose Moscowitz qualified as his executrix before the Somerset County Surrogate, under his will, in which she was named sole beneficiary.
7. The said Martha Sullivan and Catherine Cloos, formerly Catherine Sullivan instituted an action in the New Jersey Superior Court, Middlesex County, Law Division, to recover damages for personal injuries suffered in the accident on the premises October 6, 1945, and named as defendants therein, The Middlesex Borough Building & Loan Association, Rose Moscowitz, Executrix of the Estate of Martin Moscowitz, deceased, and Rose Moscowitz. The action alleged negligence, and at the trial thereof on December 14, 1949, was dismissed against the defendants Middlesex Borough *519 Building & Loan Association and Rose Moscowitz and the jury returned its verdict in favor of Martha Sullivan for Seventy Five Hundred Dollars ($7,500) and Catherine Cloos, formerly Catherine Sullivan for Five Hundred Dollars ($500) against the defendant Rose Moscowitz, executrix of the estate of Martin Moscowitz, the plaintiff herein. Subsequently, on January 12, 1950, the judgment of the plaintiff Martha Sullivan was reduced by Order of the Court to $5,000. The verdict in favor of Catherine Cloos, formerly Catherine Sullivan was undisturbed.
8. The plaintiff herein, Rose Moscowitz, executrix of the Estate of Martin Moscowitz, deceased, appealed from the entry of the judgments against the Estate to the New Jersey Superior Court, Appellate Division, which on November 15, 1950, affirmed the judgments. The opinion of the New Jersey Superior Court, Appellate Division has not been reported, but is on file in the action bearing Docket No. A-277-49.
9. The defendant Middlesex Borough Building & Loan Association which was also a defendant in the suit of Martha Sullivan and Catherine Cloos, formerly Catherine Sullivan had not procured public liability insurance, insuring Martin Moscowitz against claims of the general public. The action of Martha Sullivan and Catherine Cloos formerly Catherine Sullivan against the defendant Middlesex Borough Building & Loan Association was dismissed by the Court on the ground that at the time of the injuries sustained by the two Sullivans, the defendant Middlesex Borough Building & Loan Association had divested itself of control of the premises to Martin Moscowitz by virtue of and under the terms of the contract referred to in paragraph four herein.
10. Prior to the accident mentioned in Paragraph 5 hereof, the defendant purchased fire insurance and indicated the interest of plaintiff's decedent as vendee under the contract. The defendant purchased public liability insurance for its exclusive protection.
11. Thereafter, the plaintiff herein, as such executrix settled her liability under the judgments of Martha Sullivan and Catherine Cloos, formerly Catherine Sullivan for payment to them of the sum of Forty Five Hundred Dollars ($4,500) and secured thereby satisfaction pieces for the two judgments. Additionally, plaintiff has spent Seventeen Hundred Sixty Four Dollars and Eighty One Cents ($1,764.81) as attorney's fees, to Court Stenographers and for printing her appeal in the defense of the action of the two Sullivans against her and her appeal therefrom. The aggregate, Six Thousand Two Hundred Sixty Four Dollars and eighty one cents ($6,264.81), is the extent of plaintiff's damage.
12. This contract, referred to in paragraph one is an exhibit in evidence and marked P-1, (2/20/51-D)."
The suit here is to recover from the defendant the sum of $6,264.81 (as referred to in paragraph 11 of the stipulation of *520 facts, supra). The claim of the plaintiff is predicated upon the defendant's alleged violation of its contractual obligation in failing to procure in the name of and for the benefit of the plaintiff or her decedent, a public liability insurance policy, the premium for which was concededly paid for by the plaintiff testator herein. The terms of the contract here claimed to be applicable are set forth in paragraphs 2 and 3 of the stipulation. It will therefore serve no useful purpose to repeat them at length. Suffice it to say, that it appears from paragraph 10 of the stipulation that "prior to the accident * * * the defendant purchased fire insurance and indicated the interest of plaintiff's decedent as vendee under the contract. The defendant purchased public liability insurance for its exclusive protection." (The emphasis is the court's.) In its brief, the defendant states that, insofar as the fire insurance coverage is concerned, a certificate thereunder was sent to the vendee therein named.
The defendant, in its answer filed herein, resists the claim of the plaintiff, alleging that there was no agreement whereby it was to procure public liability insurance coverage for the benefit of the buyer; that the agreement was one whereby the buyer would pay for the public liability insurance premium for the benefit of the seller. The defendant further asserts that on November 25, 1947, plaintiff by instrument of assignment divested herself of all right, title and interest that she had in and to the premises described in the complaint and therein directed defendant to execute a deed conveying the premises to her assignee, John L. Bergen and Martha Bergen, rather than to plaintiff, and that she has no right, title or interest to support the within action. Defendant further asserts that upon delivery and acceptance of the said deed the executory agreement to convey mentioned in the complaint became extinct and void in all its parts by complete merger in the said deed. The defense of merger is not argued in the brief of the defendant and it will therefore be considered as abandoned. The defendant in its brief questioned the propriety of the expenditure for attorney's *521 fees, court stenographers and printing costs claimed by the plaintiff as part of its damages amounting to $1,764.81. This objection has now been abandoned.
The liability of the defendant, if any, must arise out of its contractual obligation with the plaintiff's decedent and to be founded and dependent upon the terms and conditions of the purchase contract referred to in paragraph 12 of the stipulation. This court is aware of the theory that where there is ambiguity in a contract the construction must be against the writer. It is elementary that the function of the court is not to make contracts but to enforce them and to give effect to the intention of the parties as of the time the contract was made. Corn Exchange Bank v. Taubel, 113 N.J.L. 605, at page 608 (E. & A. 1934); Basic Iron Ore Co. v. Dahlke, 103 N.J.L. 635, at page 638 (E. & A. 1927); Clott v. Prudential Ins. Co., 114 N.J.L. 18, at page 21 (Sup. Ct. 1934); Steelman v. Camden Trust Co., 22 N.J. Misc. 384, at page 386 (Sup. Ct. 1944); Verhagen v. Platt, 1 N.J. 89 (1948). In Clott v. Prudential Insurance Co. of America, reported at 114 N.J.L., pages 18-22 (1934), our then Supreme Court held that:
"The standard of interpretation of an integrated agreement is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the writing, other than oral statements by the parties of what they intended it to mean, except where it produces an ambiguous result, or is excluded by rule of law establishing a definite meaning. This is termed a primary rule of interpretation which is always applicable, whether the writing seems clear or ambiguous. The ascertainment of the expressed intention of the parties is the prime object of the interpretation of all written contracts. * * * A secondary rule of construction is that, where words or other manifestations of intention bear more than one reasonable meaning an interpretation is adopted which operates more strongly against the party from whom they proceed, unless their use by him is prescribed by law."
"The courts have long recognized the fact, that where there is ambiguity in a written instrument, or doubt as to its proper construction, the practical interpretation by a party *522 to it is always a consideration of great weight, and there is no surer way to ascertain what the parties intended, than to see what they have done, as they often claim more, but rarely less, than they are entitled to." Thomsen v. Reidel, 114 N.J.L. 379 (E. & A. 1934).
In Ganary v. Linker Realty Corp., 131 N.J.L. 317 (E. & A. 1943), our Court of Errors and Appeals reiterated the rule that "parties to a written lease are bound by its terms and by the construction they have by their conduct placed upon such terms." Cf. Washington Const. Co. v. Spinella, 13 N.J. Super. 139 (App. Div. 1951).
When a contract is ambiguous, it will be construed most strongly against the party preparing it or employing the words concerning which doubt arises. Fletcher v. Interstate Chemical Co., 94 N.J.L. 332 (Sup. Ct. 1920), affirmed 95 N.J.L. 543; 17 A.L.R. 92 (E. & A. 1921). Admittedly, the contract was prepared and drawn by the then attorney of the defendant, in his office. However, in construing contracts, the court must, if possible, ascertain and give effect to the mutual intention of the parties. Fletcher v. Interstate Chemical Co., supra; Basic Iron Ore Co. v. Dahlke, supra. The responsibility here sought to be imposed by the plaintiff upon the defendant must therefore be ascertained by resorting "to the practical construction placed upon the contract, as shown by the conduct of the parties, such as their acts in partial performance; such a construction is entitled to great weight if not controlling, in determining its proper interpretation. The acts done under it are a clue to the intention of the parties." Basic Iron Ore Co. v. Dahlke, supra. In the instant case, it appears that the action of Martha Sullivan and Catherine Cloos, formerly Catherine Sullivan, against the defendant Middlesex Borough Building & Loan Association was dismissed by the trial court on the ground that at the time of the injuries sustained by them, the defendant had divested itself of control of the premises; that the liability insurance purchased by the defendant was for its exclusive protection. Significantly, no reason is offered by the plaintiff *523 for her failure to make request of the defendant prior to the accident for the public liability insurance policy, and the record is barren of proof of any demand by the testator in his lifetime therefor.
"The cardinal rule, in the interpretation of contracts, is to ascertain and give effect to the common intention of the parties, so far as it may be effectuated without infringing legal principles. Where general or indefinite terms are employed in the agreement, the court may look into the attending circumstances and avail itself of such light as they may afford in ascertaining the true meaning of the language. Such an inquiry is not for the purpose of changing the writing, but to secure light by which to ascertain its actual significance. The interpretation of the contract given by the parties, as shown by their conduct, such as their acts in partial performance, will be adopted by the courts." Corn Exchange National Bank & Trust Company, Philadelphia v. Taubel, supra.
A sound guide is to examine the meaning which the parties by their conduct have given to the contract and to construe it in accordance therewith. Independent Directory Corp. v. Sherman Ind., etc., Co., 6 N.J. Super. 32 (App. Div. 1949); Mayer v. Sulzberger, 6 N.J. Super. 327 (App. Div. 1950). In Schlossman's, Inc., v. Radcliffe, 3 N.J. 430 (1950) it was held that oral testimony will not be permitted to contradict, or supply terms omitted from, a written agreement complete on its face, in absence of fraud or illegality, but the writing must be accepted as the full expression of the parties' agreement. There is neither fraud nor illegality charged in the case sub judice.
This court conceives that it is not its function to make a better contract for the parties than they themselves have seen fit to enter into, or alter it for the benefit of one party to the detriment of another. The judicial function of a court of law is to enforce the contract as it is written.
Applying these principles of law to the instant case, it appears conclusively that the intention of the parties to *524 the contract here the subject matter of interpretation, as evidenced by their mutual conduct, was that the defendant procure liability insurance in its name, for its benefit, but at the cost and expense of the plaintiff. Accordingly, there will be judgment of no cause for action, in favor of the defendant and against the plaintiff, but without costs, either party against the other.
Submit order.