26 N.J. Super. 477 (1953)
98 A.2d 124
WILLIAM BERLAND REALTY CO., A CORPORATION, PHOENIX MUTUAL LIFE INSURANCE COMPANY, A CORPORATION, PLAINTIFFS,
v.
HAHNE & COMPANY, A CORPORATION, ASSOCIATED DRY GOODS CORPORATION, A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 10, 1953.
*480 Messrs. Hannoch, Lasser, Weinstein & Myers, attorneys for plaintiffs (Mr. Herbert J. Hannoch appearing).
Messrs. Lum, Fairlie & Foster, attorneys for defendants (Mr. Vincent P. Biunno appearing).
SPEAKMAN, J.C.C. (temporarily assigned).
This case requires the determination of the following questions: (1) under the lease between the parties whereby the defendant-tenant conducts a retail store in the premises located in Montclair and which provides that part of the rent is computed on the basis of a percentage of the defendant's sales, is there an implied covenant which prevents the defendant from transferring merchandise and departments from the store in the leased premises to a new store erected by the defendant directly across the street; (2) may the defendant assign the lease or sublet the premises without the consent of the landlord; and (3) are certain mentioned items "fixtures" or "improvements" within the meaning of paragraph NINTH of the lease which provides that the "tenant will expend for fixtures and/or improvements" an amount fixed by a formula set forth therein? After a brief statement of the facts giving rise to these questions they will be disposed of in the order mentioned.
Plaintiff, a New Jersey corporation, is the owner of property at No. 50 Church Street, Montclair, New Jersey, in the heart of the Montclair retail shopping area, on which is erected a building of which defendant occupies the first floor and about 3,000 feet of the basement. The offices on the second floor are occupied by other tenants under leases providing for fixed rentals, but which are not involved here.
*481 Defendant Hahne & Company, a New Jersey Corporation, operates its principal place of business at No. 615 Broad Street, Newark, New Jersey, where a general department store is conducted. Since the institution of this suit Hahne's has been absorbed by its parent corporation, Associated Dry Goods Corporation, a corporation of Virginia, which has been added as a party defendant. Unless otherwise specified, reference to "defendant" will be understood as defendant, Hahne & Company.
Defendant has conducted a retail mercantile store in the leased portion of the building since 1937, when it was originally constructed, beginning originally with a junior miss shop and adding and removing various categories of merchandise over the years. As of February 21, 1951 it was selling in the store ladies' coats, dresses, suits, skirts and other outer and undergarments; children's clothing in junior and infant's sizes, children's shoes; toiletries and miscellaneous items of apparel, and some accessories.
Defendant's occupancy of the Montclair property has been under a series of agreements with Robertshaw Realty Co., then owner, dated May 7, 1937, June 14, 1937, May 11, 1939, January 31, 1942 and March 28, 1946, respectively, the latter being currently effective. The Robertshaw Realty Co. sold the building, subject to defendant's lease, to 4602 Realty Co. by deed dated June 20, 1946. That grantee, on July 15, 1946, executed a mortgage to Phoenix Mutual Life Insurance Company, as well as an assignment of lessor's interest in defendant's lease as additional security. The 4602 Realty Co. then transferred title, subject to the lease, by deed dated July 15, 1946, to Louis Ritter who thereafter sold the property to the plaintiff by bargain and sale deed dated September 6, 1946.
The term of the 1946 lease commenced April 1, 1946 and ended July 31, 1952, with two renewal options of five years each. These options were not to be exercised later than February 1, 1952 and February 1, 1957, respectively. The first option had not been exercised at the time of the filing of the complaint on January 5, 1951. However, that option *482 had been exercised at the time the pretrial order was filed, June 23, 1952.
The 1946 lease contains the usual provisions setting forth a description of the demised premises, the term of the lease, the amount and manner in which the rent is to be paid, and various covenants as to encumbrances, taxes, sidewalks, heat, municipal ordinances, liability for acts of tenant, waste, repairs, judgments, right of entry, etc. The lease, however, is silent as to the manner in which the business is to be operated, except for the habendum clause which provides "for the use and occupation of the demised premises by the tenant for retail mercantile purposes."
The rental provided for in the 1937 and 1939 leases was "4% of the net sales of the tenant on said premises," with a minimum annual rental of $8,400. This rent scale remained the same until the 1942 lease, when it was reduced to 4% of the net sales up to $334,882 and 2% of the sales in excess of that sum, with the same minimum rental of $8,400 per year, payable in equal monthly installments of $700. The additional rent, over and above the $8,400 was payable on December 1 of each year. The rental under the 1946 lease is the same as that provided in the 1942 lease.
At the time the rent was reduced in 1942 a new clause required the tenant to expend a sum equivalent to the amount of the reduction (2% of sales in excess of $334,882) for "fixtures and/or improvements within the demised premises." This same provision appears in the NINTH paragraph of the 1946 lease. The defendant claims credit for expenditures under this clause amounting to $10,004.63 for the year ending October 31, 1947, $19,228.17 for the year ending October 31, 1948, and $7,081.35 for the year ending October 31, 1949; while plaintiff asserts defendant is only entitled to credit for those years as follows: 1947  $3,518.74, 1948  $4,044.40 and 1949  $451.64.
Under plaintiff's operation of the store the dollar volume of sales rose from $206,157 in 1938, when the minimum rental of $8,400 was paid, to a high of $941,003.28 in 1948, *483 when a rental of $25,517.71 was paid. Thereafter the rental and sales decreased as set forth in the following schedule:

 For the lease year ending:
October 31, 1949 $24,987.04 on sales of $914,470.24
October 31, 1950 24,938.47 " " " 912,041.86
October 31, 1951 17,812.05 " " " 555,720.74
October 31, 1952 (estimated) 14,097.64 " " " 370,000.00

Hahne Realty Co., a company affiliated with the defendant, acquired title to lands at the southwest corner of Park and Church Streets, Montclair, opposite the defendant's store located in plaintiff's building, by deed recorded May 29, 1946. An announcement of that purchase and of the defendant's proposal to construct a two-story department store building for its own use was published in the Newark Evening News of May 29, 1946, and in the Montclair Times of June 6, 1946. By the pretrial order, the parties agreed that some time in 1947 plaintiff's agent and attorney, Mr. Markowitz, had actual knowledge of the defendant's intention to build, and received a notice of an application for a zoning variance for that purpose early in 1948. The notice of the board meeting was served on plaintiff on March 8, 1948.
Markowitz stated that some time in 1948 he asked Mr. Squire, defendant's vice president, about the defendant's new building but did not receive an answer. In January 1949 visible work began on this building in the form of test borings. In May 1949 the drilling of the first of two wells was begun. In June 1949 demolition of the existing structure was commenced. Excavation for the new building began in September 1949 and construction progressed regularly thereafter. Some time between the later part of 1949 and the early months of 1950 Squire informed Markowitz that he did not think that defendant would operate both stores. However, a letter of July 31, 1950, written by defendant's president, Mr. Buck, to plaintiff stated that the term of the lease ran until July 31, 1952 and that there were still two five-year renewal options. He informed Markowitz in the summer of 1950 that no conclusion had been reached by the defendant as to the proposed use to *484 which the new building would be put. At the conference of September 14, 1950 Buck affirmatively stated that the defendant intended to occupy the premises. The new building was completed in 1951 and the new store opened for business on February 20, 1951.
Mr. Architect, plaintiff's vice-president, informed defendant on October 20, 1950 and again on November 10, 1950 that plaintiff would hold the defendant responsible for any depreciation in the rental-income resulting from the promotion of business in, or the removal of departments from the leased premises to, the new store.
The defendant decided sometime between November 1, 1950 and January 14, 1951 to continue the old store under the name "Hahne's Budget Shop," and to modify the price range of the merchandise sold there to provide a greater assortment and a larger selection. Pursuant to this plan the departments were remobilized so that the new store now carries the toiletries and children's shoe departments and the higher-priced ladies' and children's apparel, and the "Budget Shop" now carries lower-priced ladies' and children's apparel. In addition, there have been established in the new store new departments, such as furniture, draperies, curtains, rugs, carpets, lamps, gifts, linens, blankets, and men's clothing and furnishings.
The defendant's new store was constructed in accordance with the latest standards of department store design. Its modern furnishings, fixtures and equipment are calculated to attract the shopper and its departments are arranged so that the shopper may wander through them with ease and convenience. These facilities are designed to overcome sales resistance and to stimulate the impulse to buy.

I.
The plaintiff alleges that the conduct of the defendant in establishing a budget shop in the leased premises and transferring to the new store the higher priced merchandise, toiletries and children's shoe departments is in violation of *485 an implied covenant contained in the lease. This issue is framed by the pretrial order as follows:
"1a. Plaintiff claims that by reason of the circumstances under which defendant originally entered into possession of the premises now occupied by it in plaintiff's property, and agreements then and thereafter made with plaintiff's predecessors in title, and the existing lease and the covenants therein contained and implied in law therefrom, defendant may not conduct in its new store located across the street from the leased premises, a business in competition with the business conducted by it in the leased premises prior to the opening of such new store, that defendant is conducting such competitive business, and that plaintiff is entitled to injunctive relief and damages.
1b. Defendants assert that the party's rights are governed exclusively by the present lease and that its provisions contain no restrictive covenant, nor any other provisions restricting its business operations in any way. It relies on the parol evidence rule as to any alleged implied covenants or other matter outside the present lease and raises the defenses of estoppel, waiver, acquiescence, laches, failure to do equity and unclean hands. It alleges that any consideration of prior leases is also barred by the parol evidence rule as none of them is now in force or effect."
The parol evidence rule, which prohibits the modification of a written agreement by addition, alteration, deletion, etc., through reference to matter extraneous to a written agreement (Naumberg v. Young, 44 N.J.L. 331 (Sup. Ct. 1882)), will not preclude the existence of a covenant implied from the agreement itself. An implied covenant is not viewed as an addition to the agreement but the articulation of a provision implicit in the agreement and as much a part thereof as if it had been expressly stated. Bliss v. California Co-op. Producers, 30 Cal.2d 240, 181 P.2d 369, 170 A.L.R. 1009 (Sup. Ct. 1947). See also 12 Am. Jur., Contracts, sec. 239, and cases cited in note 11. Cf. R. Krevolin & Co., Inc. v. Brown, 20 N.J. Super. 85 (App. Div. 1952); Mayer Ice Mach. & Eng. Co. v. Van Voorhis, 88 N.J.L. 7 (Sup. Ct. 1915). The source of the obligation of express covenants and implied covenants is the manifested intention of the parties arising from the terms of a contract or the substance thereof. See 14 Am. Jur., Covenants, Conditions and Restrictions, sec. 14.
*486 As to the defendant's contention that consideration of prior leases is barred by the parol evidence rule, a decisive answer is furnished in Casriel v. King, 2 N.J. 45 (1949). Mr. Justice Heher, speaking for the Supreme Court, said, at p. 50:
"* * * The polestar of construction is the intention of the parties to the contract as disclosed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are to be regarded. Even when the contract on its face is free from ambiguity, evidence of the situation of the parties and the surrounding circumstances and conditions is admissible in aid of interpretation. The inquiry is the meaning of the words when assayed by the standard adopted by the law. On the theory that all language will bear some different meanings, evidence of the circumstances is always admissible in the construction of integrated agreements, but not for the purpose of giving effect to an intent at variance with any meaning that can be attached to the words. This is a primary rule of interpretation which has special application where the meaning of the instrument is not clearly apparent. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing  not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. So far as the evidence tends to show not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant. And the general design of the agreement is to be kept in view in ascertaining the sense of particular terms. Corn Exchange National Bank & Trust Co. v. Taubel, 113 N.J.L. 605 (E. & A. 1934); New York Sash & Door Co., Inc. v. National House and Farms Association, Inc., 131 N.J.L. 466 (E. & A. 1944); Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379 (E. & A. 1947). In short, we are to consider what was written in the light of the circumstances under which it was written, and give to the language a rational meaning consistent with the expressed general purpose."
See also Alnor Construction Co. v. Herchet, 10 N.J. 246 (1952).
Although resort may be had to the surrounding circumstances to establish the meaning of a writing, it is nonetheless well settled that courts will not make a better or different contract than the parties themselves have seen fit to enter into. Washington Construction Co., Inc. v. Spinella, *487 8 N.J. 212 (1951); Herbert L. Farkas Co. v. N.Y. Fire Ins. Co., 5 N.J. 604 (1950); James v. Federal Ins. Co., 5 N.J. 21 (1950); Kupfersmith v. Delaware Ins. Co., 84 N.J.L. 271 (E. & A. 1913). See 3 Williston on Contracts (Rev. Ed. 1936), sec. 620; 12 Am. Jur., Contracts, sec. 228.
Accordingly, it is universally recognized that an implied covenant can arise only by necessary implication from specific language of a contract or because it is indispensable to carry into effect the intention expressed in the contract. Sacramento Nav. Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 (1927); Freeport Sulphur Co. v. American Sulphur R. Co., 117 Tex. 439, 6 S.W.2d 1039, 60 A.L.R. 890 (Sup. Ct. 1928); Cousins Inv. Co. v. Hastings Clothing Co., 45 Cal. App.2d 141, 113 P.2d 878 (Dist. Ct. App. 1941). See 14 Am. Jur., Covenants, Conditions and Restrictions, sec. 14. Cf. Frisch v. Rutgers Village, 8 N.J. Super. 392, 400 (Ch. Div. 1950), wherein Judge Haneman gave expression to the accepted principle that restrictions upon the use of land are not looked upon with favor by a court of equity. The reason for this rule exists as much in the case of leases as it does in deeds. Naumberg v. Young, supra.
Terms are to be implied in a contract, not for the reason that they are just or reasonable, but rather for the reason that the parties must have intended them and have only failed to express them because they are too obvious to need expression (Cousins Inv. Co. v. Hastings Clothing Co., supra; Danciger Oil & Refining Co. of Texas v. Powell, 137 Tex. 484, 154 S.W.2d 632, 137 A.L.R. 408 (Sup. Ct. 1941); Guaranty Trust Co. of New York v. Hannay & Co., [1918] 2 K.B. 623, 632), or because they are necessary to give business efficacy to the contract as written, or to give the contract the effect which the parties, as fair and reasonable men, presumably would have agreed on if, having in mind the possibility of the situation which has arisen, they contracted expressly in reference thereto. See 12 Am. Jur., Contracts, sec. 239; 14 Am. Jur., Covenants, Conditions and Restrictions, sec. 14.
*488 The only provision of the lease which refers to the type of business to be carried on is the habendum clause, "to have and to hold the said demised premises for use and occupation by the tenant for retail mercantile purposes * * *." Certainly there is nothing in this language which requires the implication of the covenant contended for by plaintiff.
Furthermore, there is nothing in the nature of the transaction to justify a finding that such a covenant was indispensable to effectuate the intention of the parties. The facts show that the building of the new store was dictated by economic developments. It was a lawful act on the part of the tenant and not objected to by the plaintiff. Defendant had a right to build as good a store as possible. Having done this, it was only sound to put in the new store those items which would sell best in such a location in view of the plainness of the old store and extremely modern design of the new store. It is not unlikely that without any change in the merchandise carried in the old store, the opening of the new store would itself have the effect of decreasing sales in the old store.
Testimony of the president of the defendant corporation that the place to sell high-priced merchandise was in the more modern store is entirely reasonable. By so doing, it cannot be said that the defendant acted in bad faith. On the contrary, careful consideration of all the evidence leads to the conclusion that throughout the period of the lease the parties acted in good faith. The delay on the part of the defendant in making known its plans relative to continuation of the business in the leased premises was clearly necessitated by the fact that the defendant itself had not reached a decision thereon. It was the type of decision which, of economic necessity, had to be made at a time when business conditions of the new year could most accurately be judged. Under the express terms of the lease the defendant had until February 1, 1952, within which period it could exercise its option of renewal.
Nor can it be said that had the specific question been raised at the time of the signing of the 1946 lease the tenant *489 would have agreed to such a covenant. It was then in a position where it could have merely exercised the option in the 1942 lease and so timed the building of the new store as to transfer all operations in 1951 and to discontinue completely the old store. These facts make difficult a finding that the parties would have agreed expressly to the alleged covenant, had their attention been directed to it.
In this connection it only remains to consider the argument of the plaintiff that the mere existence of the percentage feature in the lease carries with it the implied prohibition against the rearrangement complained of. The plaintiff argues that such is the law and offers in support of its position the following as authority: S.P. Dunham & Co. v. 26 E. State St. Realty Co., 134 N.J. Eq. 237 (Ch. 1943); Kirke La Shelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 188 N.E. 163 (Ct. App. 1933); Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214 (Ct. App. 1917); Brassil v. Maryland Casualty Co., 210 N.Y. 235, 104 N.E. 622, L.R.A. 1915a, 629 (Ct. App. 1914); Goldberg, 168-05 Corp. v. Levy, 170 N.Y. Misc. 292, 9 N.Y.S.2d 304 (Sup. Ct. 1938), affirmed 256 App. Div. 1086, 11 N.Y.S.2d 315 (App. Div. 1939); Seggebruch v. Stosor, 309 Ill. App. 385, 33 N.E.2d 159 (App. Ct. 1941); Cissna Loan Co. v. Baron, 149 Wash. 386, 270 P. 1022 (Sup. Ct. 1928); Sinclair Refining Co. v. Davis, 47 Ga. App. 601, 171 S.E. 150 (Ct. App. 1933); Sinclair Refining Co. v. Giddens, 54 Ga. App. 69, 187 S.E. 201 (Ct. App. 1936); Marvin Drug Co. v. Couch, 134 S.W.2d 356 (Tex. Ct. Civ. App. 1939); Selber Bros. v. Newstadt's Shoe Stores, 194 La. 654, 194 So. 579 (Sup. Ct. 1940), 203 La. 316, 14 So.2d 10 (Sup. Ct. 1943); Mayfair Operating Corp. v. Bessemer Properties, Inc., 150 Fla. 132, 7 So.2d 342 (Sup. Ct. 1942); Note, 61 Harv. L. Rev. 317 (1948).
An examination of those authorities reveals that in each case there were factual and legal elements present which differentiate them from the present case.
*490 The language relied upon from the Dunham case is dictum on a point not decided in that case and affords no basis for implying the covenant suggested here.
The Kirke La Shelle case, the Wood case, and the Brassil case do not deal with percentage leases and accordingly render no help in determining whether such a lease, without more, carries specific implied covenants as to the tenant's right to mobilize his departments.
The Goldberg case involved an attempt by the tenant to depress rentals to such a figure as to bring the cancellation clause into play. The holding was that such conduct was in direct violation of the covenant of good faith which exists in every contract. Bad faith has not been established in the instant case. The objections voiced by the landlord were directed to the manner in which the new store was to be carried on. Failure of the tenant to comply with the landlord's wish that the new store be operated in such a way as to guarantee maintenance of the then extant level of sales at the old store cannot be termed "bad faith."
The Seggebruch case is not in point for two reasons. First, there was no minimum rental, and second, the trial court found that the "* * * defendant willfully and deliberately and purely with the intention of injuring the plaintiff * * *" opened a new gas station next door, and transferred to that station substantially all the sales of 12,000 gallons per month and continued to sell only 200 gallons per month at the leased premises. Since there was no change in overall volume the court treated the income from the new place as belonging to the old.
In the Cissna case the lease contained an express provision requiring the tenant to operate a department store of the same general character as the landlord had before; thus there was a standard of reference for the mobilization of departments. The basis of the complaint was the transfer of some of the very business which the landlord had leased, along with the physical property to the tenant.
The two Sinclair cases involved minimum rentals of $10 per month. Accordingly, it is not surprising that when the *491 tenant failed to operate a gasoline station the court held the lessor was entitled to cancel the lease. A covenant that a gas station would be operated was necessarily implied from the fact that except for the nominal amount mentioned, the rent was to be calculated on the basis of a part of the price received for each gallon of gasoline sold.
The opinion of the majority of the court and the dissenting opinion of Chief Justice Bond indicate that the Marvin case was factually quite different from the present one. That case, like the Seggebruch case, did not involve a minimum rental. Furthermore, as was the situation in the Cissna case, the landlord had sold a going business, to wit, a drug store. The court's finding, that failure to keep the store open during hours indicated by local custom breached an implied covenant, was accordingly sound. It is interesting to note that the case was not followed by the Texas courts when a factual situation was presented similar to the one in the instant case. See Palm v. Mortgage Investment Co. of El Paso, 229 S.W.2d 869 (Tex. Ct. Civ. App. 1950).
The Selber Bros. cases were decided in the courts of Louisiana and are accordingly based on the Civil Code which in turn was taken from the Code Napoleon. A more recent Louisiana case, Rials v. Davis, 212 La. 161, 31 So.2d 726 (Sup. Ct. 1947), is valuable as an aid in the appraisal of the Selber cases. The court there stated that the tenant had relied on certain decisions from common law states and said:
"Common law authorities cannot aid us in a solution of the problem for the reason that the common law regards a lease for years as a grant of an estate, and not a mere transfer of the use and enjoyment of the thing leased * * *."
See also Reilley v. Kroll, 197 La. 790, 2 So.2d 214 (Sup. Ct. 1941), wherein the court stated:
"* * * The rights of a landlord and tenant must be governed solely by the laws of this State for the reason that the rules governing the rights of landlord and tenant under the civil law are radically different from those under the common law. * * *"
*492 The Mayfair case involved the letting of a motion picture theatre under a percentage lease which provided that the tenant was. "* * * to `use its best efforts to obtain and maintain the highest volume of business on the premises.' * * *" When defendant attempted to interrupt operation, the court found little difficulty in finding an implied covenant that the theatre would be operated continuously. Clearly, both the type of conduct there complained of and the specific provisions in that lease are different in vital respects from those in the instant case. Cf. Ridgefield Investors, Inc. v. Mae Ellen, Inc., 57 So.2d 842 (Fla. Sup. Ct. 1952).
The note in 61 Harv. L. Rev. 317 is an excellent discussion of percentage leases and contains many valuable recommendations as to the manner in which they should be drafted. While it contains language which supports the plaintiff's contention, it also contains language helpful to the defendant's position. However, it is of little aid in the solution of the problem here involved.
In addition, the plaintiff contends that the recent case of Mutual Life Ins. Co. of N.Y. v. Tailored Woman, Inc., 123 N.Y.S.2d 349 (Sup. Ct., April 22, 1953), fully supports its position. However, that lease provided that the "business will be conducted and maintained in a manner substantially similar to the tenant's present store * * *." The "present store" contained a fur department. The defendant's removal of that department to another floor was clearly a violation of the specific wording of the agreement. In addition the lease contained a provision that for purposes of computation gross receipts would include "* * * all receipts and charges for goods, wares and merchandise sold on, in or from the demised premises. * * *." Since the new fur department was in many respects dependent on the main premises, the landlord would be entitled to his percentage on sales of furs if only for the provision last quoted.
In the absence of circumstances of the nature present in the cases relied upon by the plaintiff, the courts in common-law jurisdictions have refused to imply a covenant of the type contended for by the plaintiff. See Masciotra v. Harlow, 105 *493 Cal. App.2d 376, 233 P.2d 586 (Dist. Ct. App. 1951); Stockton Dry Goods Co. v. Girsh, 36 Cal.2d 677, 227 P.2d 1 (Sup. Ct. 1951); Cousins Inv. Co. v. Hastings Clothing Co., supra (where many of the cases cited by the plaintiff are reviewed and distinguished); Ridgefield Investors, Inc. v. Mae Ellen, Inc., supra; Jenkins v. Rose, 213 N.C. 606, 197 S.E. 174 (Sup. Ct. 1938); Palm v. Mortgage Investment Co. of El Paso, supra; Freeport Sulphur Co. v. American Sulphur R. Co., supra.
It is accordingly held that no implied covenant exists in the present lease which prohibits the tenant in good faith from adding to, or withdrawing from the premises, or operating in the new store, whatever departments its business judgment dictates should be operated therein.

II.
Generally, a contract involving personal services, skill or confidence is nonassignable without the consent of the other party thereto. Wooster v. Crane & Co., 73 N.J. Eq. 22 (Ch. 1907); Schlessinger v. Forest Products Co., 78 N.J.L. 637 (E. & A. 1910). See 4 Am. Jur., Assignments, sec. 8. While apparently the precise question under consideration has not been previously decided in this State, and although there is some authority to the contrary (MacFadden-Deauville Hotel, Inc. v. Murrell, 182 F.2d 537 (C.C.A. 5 1950); Cities Service Oil Co. v. Taylor, 242 Ky. 157, 45 S.W.2d 1039, 79 A.L.R. 1374 (Ct. App. 1932)), persuasive cases in other jurisdictions have held a lease to be a personal contract and have denied to the lessee the right to assign it or sublet the premises when the lease places a special reliance on the skill, integrity or knowledge of the lessee (Powerine Co. v. Russell's, Inc., 103 Utah 441, 135 P.2d 906 (Sup. Ct. 1943)), or where there is contemplated a close association between the lessee and lessor in the operation of the leased premises. Nassau Hotel Co. v. Barnett & Barse Corp., 162 App. Div. 381, 147 N.Y.S. 283 (App. Div. 1914), affirmed 212 N.Y. 568, 106 N.E. 1036 *494 (Ct. App. 1914); Gerould Co. v. Arnold Constable & Co., 65 F.2d 444 (C.C.A. 1 1933); Moore v. Thompson, 93 Mo. App. 336, 67 S.W. 680 (Ct. App. 1902).
Part of the rent for the premises is calculated upon a percentage of the gross sales. The amount of these sales is dependent upon the successful operation of the store by the tenant. Necessarily, the success of the business depends, in addition to other factors, upon the tenant's business judgment, skill, ability and reputation. Thus, these qualifications are significant factors in the establishment and maintenance of this relationship, particularly in the light of the holding herein that there is no general covenant implied as to the manner in which the business must be operated.
There can be no doubt that the lessor contracted for the merchandising ability, established reputation, and general business acumen and integrity of Hahne & Company. To permit a substitution of tenants, either by a sublease or by an assignment, would frustrate the purpose for which this lease was entered into and deprive the lessor of the benefits of his contract. These considerations compel the conclusion that the lessee may not assign the lease or sublet the premises without the consent of the landlord, and an inference to the contrary may not be drawn from the fact that the contract contains a clause providing that the "obligations herein contained and the rights hereby granted shall enure and be binding upon the successors and assigns. * * *" See Wooster v. Crane & Co., supra; Schlessinger v. Forest Products Co., supra; 4 Am. Jur., Assignments, sec. 7. Cf. Braunstein v. McGrory Stores Corp., 93 N.J. Eq. 419 (E. & A. 1922).

III.
The pertinent parts of the NINTH paragraph of the lease provide:
"The tenant covenants and agrees that should the net sales * * *, in any twelve month period ending on the thirty-first day of October during said tenancy * * * exceed the sum of $334,882., the *495 tenant will expend for fixtures and/or improvements within the demised premises during any such twelve-month period a sum equal to two percent (2%) of such excess, * * *."
The plaintiff asserts that the defendant was required to expend a total of $33,718.82 for the three years in question, but has only spent $8,014.78 in accordance with this provision. The plaintiff agrees that the expenditures for the following items were "fixtures and/or improvements" and thus proper: painting and decorating; draperies; mirrors; carpentry, including moulding, skylight and door repairs; electrical work, wiring, fixtures, receptacles, switches and lights; air conditioning installation, including the electrical and plumbing work; elevator repairs, including parts; miscellaneous items, including hardware, etc., and miscellaneous repairs.
The plaintiff concedes that the other items purchased, such as merchandise storage fixtures, including cases, shelves, stock racks and boxes; merchandise display fixtures, including stands, displayers, neckwear and blouse forms, dress and lingerie forms, heads, shields and mannequins; customer service fixtures, such as stools, armchairs, fitting room curtains and mirrors; sales fixtures, including high-speed electrical cash registers, and carpeting are trade fixtures, but contends that as such they are not "fixtures and/or improvements." It is admitted that if the foregoing items are within the meaning of the word "fixtures and/or improvements" the defendant has spent the required amounts.
The plaintiff argues that since the word "fixtures" may mean a trade fixture or a chattel that has been permanently annexed to the realty, it is ambiguous and therefore must be construed in light of the fact that the reduction in rent was offset by the requirement that a similar amount would be spent for "fixtures and/or improvements." This, plaintiff contends, is indicative of the intention of the parties that the expenditures under this clause were to inure to the landlord in the form of permanent improvements. On the other hand, the defendant argues that though the term may be ambiguous, *496 the word "fixture" has a definite meaning which is broad enough to include "trade fixtures."
Since the meaning of this clause is ambiguous, at least in the sense that the term "fixtures" may be applied in more than one way, the construction of the provision by the parties themselves, as manifested by their conduct, affords the best guide to its meaning. Balsham v. Koffler, 8 N.J. Super. 48 (App. Div. 1950); Mayer v. Sulzberger, 6 N.J. Super. 327 (App. Div. 1950); Independent Directory Corp. v. Sherman Ind., etc., Co., 6 N.J. Super. 32 (App. Div. 1949); Kingston Trap Rock Co. v. Eastern Engineering Co., 132 N.J.L. 254 (E. & A. 1944); Basic Iron Ore Co. v. Dahlke, 103 N.J.L. 635 (E. & A. 1927); see 3 Williston on Contracts (Rev. ed. 1936), sec. 623.
On March 19, 1947, shortly after the plaintiff acquired the lease, it informed defendant that the defendant was required to expend $8,712.01 for "fixtures and/or improvements in the demised premises" before April 30, 1947, and requested defendant to submit its "advices concerning this subject." The defendant complied with this request on April 3, 1947, by submitting an itemized account of the expenditures for the 12-month period ending October 31, 1946, and it is stipulated in the pretrial order that "After the aforesaid request no further request for a statement of expenditures under said paragraph was made thereafter until October 20, 1950, * * *."
The items for the year 1946 included: installation of pump, air conditioning ducts, case lights, door closer and elevator pit; purchase of lamps, chairs, rugs, floor cases, carpet and padding, case racks, steam alteration irons, repairs of fixtures and walk, and construction of stock shelving and recreation room. These items are substantially of the same character as the items purchased for the three years in question as set forth above.
The construction consistently placed upon this language by the defendant, as evidenced by the nature of the items purchased to which no objection was made by plaintiff for a period of almost four years after knowledge thereof, *497 constitutes a practical construction of the clause by the parties which, under the circumstances of this case, should not be ignored.
Furthermore, the contract should be construed in its entirety (Washington Construction Co., Inc. v. Spinella, supra; see 3 Williston on Contracts (Rev. ed. 1946), sec. 618), and be considered in the light of the circumstances under which it was written and thus give to that language a rational meaning consistent with its expressed general purpose. Casriel v. King, supra. The lease specifically provides that the demised premises shall be used and occupied for "retail mercantile purposes." The parties, in accordance therewith provided in the THIRD paragraph that "The tenant * * * shall have the right to install furniture, fixtures and equipment for the convenience and comfort of its employees and customers * * *." The purposes for which this property was leased, the admission by the plaintiff that the word "fixtures" in the THIRD paragraph connotes "trade fixtures," and the practical construction given to this clause by the parties, as evidenced by their conduct, all lead to the conclusion that the language "fixtures and/or improvements" includes trade fixtures. The expenditures were therefore proper.
A judgment may be entered in accordance with the foregoing views.